UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKIE BURKS; BRUNILDA PAGAN CRUZ; VENUS CUADRADO; and RHONDA DRYE, individually and on behalf of all persons similarly situated,<br><br>                              Plaintiffs,<br><br><br>            -against-<br><br><br>GOTHAM PROCESS, INC.; MULLOOLY, JEFFERY, ROONEY & FLYNN, LLP; BASSEM ELASHRAFI; and CARL BOUTON,<br><br>                              Defendants. | **No. 20 Civ. 1001**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.      Plaintiffs and over a thousand putative Class Members bring this action to challenge Defendants' coordinated unlawful scheme to extract money from New York City consumers, and enrich themselves, by systematically falsifying affidavits of service and filing those affidavits of service in New York City Civil Court. As a result, over a thousand New York City consumers have had and continue to have lawsuits filed against them without lawful service, many resulting in default judgments.

2.      This sewer service scheme is executed by Defendants: Gotham Process, Inc. ("Gotham"), a process serving agency; Bassem Elashrafi and Carl Bouton, two individual process servers who serve process for Gotham; and Mullooly, Jeffrey, Rooney & Flynn, LLP ("Mullooly"), a law firm that hires them to serve process.

3.      On or after March 5, 2019, Plaintiff Jackie Burks received a notice in the mail, informing her that her wages would be garnished because a judgment had been entered against her in a debt collection lawsuit that she had never heard of, in which she had never been served.

4.      Unbeknownst to Ms. Burks, Mullooly had filed a debt collection lawsuit against her in 2017. Elashrafi, on behalf of Gotham, filed an affidavit of service in which he swore that he served Ms. Burks in the lawsuit by personally handing a copy of the summons and complaint to "Christina Burks," who "identified herself as [a] relative of [Ms. Burks]." This affidavit of service was false. The "Christina Burks" named by Elashrafi does not exist: Ms. Burks does not have any relatives by the name of Christina Burks and does not know anyone with that name. Ms. Burks was never served in the lawsuit. Nonetheless, on the basis of Elashrafi's false affidavit, Mullooly obtained a default judgment against Ms. Burks.

5.      Elashrafi and Bouton filed the same sort of false affidavits of service, alleging service on nonexistent relatives, in the New York City debt collection actions against Plaintiffs Brunilda Pagan Cruz, Venus Cuadrado, and Rhonda Drye. The nonexistent "relatives" in those affidavits were "Daniel Cruz," "Anthony Cuadrado," and "Richard Drye," respectively. None of the Named Plaintiffs were ever served with summons and complaint documents.

6.      Defendants routinely prepare and file these false affidavits of service, as they did against Named Plaintiffs, and frequently use them to obtain unlawful default judgments.

7.      Plaintiffs' counsel has reviewed a sample of approximately three hundred affidavits of service.  In an implausible 94% of the reviewed affidavits of service, Bouton and Elashrafi swore that they effectuated service by handing the summons and complaint to a "relative" of the person to be served.

8.      Although all four Named Plaintiffs were able to eventually prevail in the debt collection actions filed against them, all of the Named Plaintiffs expended time and money for which they were never compensated.

9.      On information and belief, because they were never served, many Class Members remain unaware of the lawsuits filed against them.

10.     On information and belief, other Class Members did not know how to challenge the unlawful service, and have paid or will pay money to satisfy these debts or judgments, or risk having money collected from them in the future.

11.     Defendants' conduct is ongoing and harms additional Class Members every day.

12.     Named Plaintiffs bring this action on behalf of themselves and a Class consisting of all natural persons who have been or will be sued by Mullooly in New York City Civil Court cases in which an affidavit of service has been or will be filed, stating that Elashrafi or Bouton, on behalf of Gotham, effectuated service by delivering the papers to a person identified as a relative of the person to be served (the "Class Members").

13.     Defendants' practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. (the FDCPA), which prohibits unfair, deceptive, and abusive debt collection practices; New York General Business Law § 349, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce"; and N.Y.C. Admin. Code § 20-409.2, which provides a cause of action for "[a]ny person injured by the failure of a process server to act in accordance with the laws and rules governing service of process in New York state."

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201(a) and 2202.

15.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because it is the district where a substantial part of the events giving rise to Plaintiffs' claims occurred—it is the district in which Defendants filed and litigated actions against Ms. Burks and many class members.

## PARTIES

16.     Plaintiff Jackie Burks is a natural person residing in Staten Island, New York.

17.     Plaintiff Brunilda Pagan Cruz is a natural person residing in the Bronx, New York.

18.     Plaintiff Venus Cuadrado is a natural person residing in Ansonia, Connecticut.

19.     Plaintiff Rhonda Drye is a natural person residing in the Bronx, New York.

20.     Each Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3), in that each Plaintiff was alleged to owe a debt stemming from an unpaid balance on a consumer account.

21.     Defendant Gotham Process, Inc. ("Gotham") is a corporation organized under the laws of the State of New York with its principal place of business located at 299 Broadway, New York, New York 10007. Gotham is registered as a process serving agency with the New York City Department of Consumer and Worker Protection ("DCWP," formerly known as the New York City Department of Consumer Affairs), with license number 1251720-DCA.

22.     Defendant Mullooly, Jeffrey, Rooney & Flynn, LLP ("Mullooly") is a domestic registered limited liability partnership organized under the laws of the State of New York with its principal place of business located at 6851 Jericho Turnpike, Syosset, New York 11791.

Mullooly is a debt collection law firm and is registered as a debt collection agency with DCWP, license number 2045157-DCA.

23.     Defendant Bassem Elashrafi ("Elashrafi") is a natural person. He is registered as an individual process server with DCWP, license number 2016929-DCA. Elashrafi serves process for Gotham.

24.     On information and belief, at all times described herein, Elashrafi was an employee or independent contractor of Gotham.

25.     On information and belief, at all times described herein, Elashrafi acted on behalf of Gotham.

26.     Defendant Carl Bouton ("Bouton") is a natural person. He is registered as an individual process server with DCWP, license number 2011838-DCA. Bouton serves process for Gotham.

27.     On information and belief, at all times described herein, Bouton was an employee or independent contractor of Gotham.

28.     On information and belief, at all times described herein, Bouton acted on behalf of Gotham.

29.     Defendants are all "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that Defendants regularly use the instrumentalities of interstate commerce or the mails in their businesses, the principal purpose of which is the collection of debts, and Defendants regularly collect consumer debts due or owed to another.

30.     Although the FDCPA's definition of "debt collector" exempts process servers "while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt," 15 U.S.C. § 1692a(6)(D), this exemption does not apply to

any process server who *fails* to serve process. *See, e.g.*, *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010) ("Because the FDCPA protects process servers only 'while' they serve process, . . . defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption.").

## STATUTORY AND REGULATORY SCHEME

31.     Under the New York Civil Practice Law and Rules, all lawsuits in New York State courts must be commenced by service of a summons and complaint on the defendant. There are three lawful methods of service on a natural person. N.Y. C.P.L.R. § 308.

32.     First, the person may be served by personal service—that is, personal delivery of the summons and complaint. *Id.* § 308(1).

33.     Second, the person may be served by personal delivery of the summons and complaint "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served," and mailing the summons and complaint to the person to be served's last known residence or actual place of business. *Id.* § 308(2). This is called "substitute service."

34.     Third, if with due diligence the person cannot be served by personal service or substitute service (i.e. if after multiple attempts, nobody answers the door), he or she may be served by "nail and mail" service: "affixing the summons [and complaint] to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served," and mailing the summons and complaint to the last known residence or actual place of business. *Id.* § 308(4).

35.     An affidavit of service must subsequently be filed with the court. When service is made via substitute service, the affidavit must "identify" the individual who was served; include

"a description of the person [served], including, but not limited to, sex, color of skin, hair color, approximate age, approximate weight and height, and other identifying features"; and "state the date, time and place of service." *Id.* §§ 306(a-b), 308(2).

36.    The New York State Unified Court System has acknowledged that debt collectors often "fail[] to provide consumers with a notice of lawsuits started against them, a troubling practice dubbed 'sewer service.'"[1]

37.    In recognition of the widespread problem of sewer service, in 2014 the New York State Unified Court System promulgated a new rule that requires — *in addition to* lawful service of process — a second mailing of the summons and complaint in all consumer debt cases in New York City Civil Courts. 22 N.Y.C.R.R. § 208.6(h). Under these rules, the debt collector must provide an extra copy of the summons and complaint and an addressed envelope to the court clerk's office, which then mails the summons and complaint directly to the consumer. *Id.*

38.    Under New York law, an individual's actual knowledge of a lawsuit does not obviate the requirement that service of process must be made in accordance with the statutory requirements. To the contrary, a New York court lacks personal jurisdiction over any individual who was not lawfully served with process, and such an individual may move to dismiss an action, or vacate a judgment, on this basis. *See* N.Y. C.P.L.R. §§ 3211(8), 5015(a)(4).

39.    When a defendant fails to appear or submit an answer, the plaintiff may file an application for a default judgment against that defendant. *Id.* § 3215(a). The plaintiff's default judgment application must be filed with a copy of the affidavit of service. *Id.* § 3215(f).

---

[1] N.Y. Unified Court Sys., *NY Court System Adopts New Rules to Ensure a Fair Legal Process in Consumer Debt Cases* (Sept. 16, 2014), *available at* http://ww2.nycourts.gov/sites/default/files/document/files/2018-05/PR14_06.pdf.

40.     Debt collectors who obtain judgments against consumers may execute on them by garnishing individuals' wages or levying their bank accounts, with no judicial approval required, for the next *twenty years*. *Id*. §§ 211(b), 5231, 5232.

41.     Executions can be issued by attorneys "as officer[s] of the court." *See id.* §§ 5222(a), 5230(b). To execute by wage garnishment, an attorney issues an income execution to the New York City marshal and serves it on the consumer with an accompanying notice of garnishment. *See id*. § 5231(b), (d); N.Y.C. Civ. Ct. Act § 1609(a). To execute by bank levy, an attorney issues a restraining notice (which freezes a consumer's bank account) to the consumer's bank, which is required to serve it on the consumer, and then later issues a levy on the bank account. *See* N.Y. C.P.L.R.§§ 5222(a), (d), 5222-a(b), 5232.

42.     All New York City process servers and process serving agencies must be licensed by the New York City Department of Consumer and Worker Protection (DCWP) and must follow rules and regulations issued by the City. N.Y.C. Admin. Code § 20-403 *et seq.*

43.     All New York City process servers must maintain logbooks in which they record all instances of service and attempted service in a prescribed format. N.Y. G.B.L. § 89-cc.

44.     All New York City process servers must maintain GPS records of their location at all times while carrying out their process serving duties. N.Y.C. Admin. Code § 20-410.

45.     Whenever a New York City process server or process serving agency receives notice that a court has scheduled an evidentiary hearing regarding service, the process server or agency must report the existence of the hearing, and its result, to DCWP. 6 R.C.N.Y. § 2-236.

46.     All New York City process serving agencies must "be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process

server to whom it has distributed, assigned or delivered process for service." N.Y.C. Admin. Code § 20-406.2(b).

## FACTUAL ALLEGATIONS

47.    Defendants are two individual process servers, the process serving agency that employs them, and the law firm that hires them to serve process in debt collection lawsuits in New York City Civil Court.

48.    Defendants engage in a coordinated scheme to extract money from New York City consumers, and enrich themselves, by systematically falsifying affidavits of service and filing those affidavits of service in Court. As a result, over a thousand New York City consumers have had and continue to have lawsuits filed against them without lawful service.

49.    Sewer service can allow Defendants to obtain illegal — but lucrative — default judgments against consumers because consumers who are unaware that cases have been brought against them are unable to appear in court to defend themselves.

### A.  Mullooly Files Debt Collection Lawsuits against Class Members and Hires Gotham to Serve Process

50.    Mullooly contracts with Gotham as the process serving agency for thousands of New York City Civil Court debt collection lawsuits per year.

51.    Mullooly contracted with Gotham as the process serving agency for the New York City Civil Court debt collection lawsuits filed against Named Plaintiffs and each of the Class Members.

52.    As described in greater detail below, *see* infra ¶¶ 122-44, Mullooly knows or should know that Elashrafi and Bouton, on behalf of Gotham, are not actually serving process on the consumer defendants in these debt collection lawsuits, and that Elashrafi and Bouton, on behalf of Gotham, are falsifying affidavits of service.

53.     In many of these lawsuits, including the cases against Ms. Burks, Ms. Cruz, Ms. Cuadrado, and Ms. Drye, Mullooly attempts to collect debt on behalf of Unifund CCR, LLC ("Unifund"). Unifund is a debt buyer: a company that buys debt (typically, credit card debt) from original creditors or other debt buyers, often for pennies on the dollar, and then collects on that debt for profit. In the remaining lawsuits, Mullooly attempts to collect debt on behalf of other debt buyers, medical offices, or hospitals.

### B.  Elashrafi and Bouton, on behalf of Gotham, Do Not Serve Process on Class Members

54.     Gotham retains Elashrafi and Bouton as process servers for hundreds of New York City Civil Court debt collection lawsuits filed by Mullooly each year.

55.     Gotham retained Elashrafi or Bouton as process servers for Named Plaintiffs and each of the Class Members in connection with New York City Civil Court debt collection lawsuits filed against them by Mullooly (the "Lawsuits").

56.     As described in greater detail below, *see* infra ¶¶ 122-44, Gotham knows that Elashrafi and Bouton are not actually serving process on the consumer defendants in the Lawsuits, and that Elashrafi and Bouton are falsifying affidavits of service.

57.     Elashrafi and Bouton did not serve Named Plaintiffs with the summonses and complaints in the lawsuits filed against them.

58.     As a result, Named Plaintiffs did not receive the legally required notification that they were being sued. Ms. Burks did not learn that a lawsuit had been filed against her until Mullooly obtained a judgment against her and attempted to collect on that judgment. Ms. Cruz did not learn that a lawsuit had been filed against her until her neighbor notified her of papers the neighbor had received by mail. Ms. Cuadrado did not learn that a lawsuit had been filed against her until her mother notified her of papers she had received by mail. Ms. Drye did not learn that a

10

lawsuit had been filed against her until her neighbor notified her of papers he picked up off the floor of their apartment's entranceway.

59.    On information and belief, Elashrafi and Bouton do not serve most or all Class Members with the summonses and complaints in the Lawsuits, as required by New York state law.

60.    On information and belief, because Class Members have not been (and continue not to be) served with the summonses and complaints in the Lawsuits, many Class Members do not know that Lawsuits had been filed against them.

61.    Only approximately 17% percent of Class Members appear in court to defend the lawsuits against them.

62.    On information and belief, some Class Members (like Ms. Cruz, Ms. Cuadrado, and Ms. Drye) become aware of the Lawsuits not through lawful service of process, but in some other way, such as through the court-mandated mailing of the summons and complaint. *See supra* ¶ 37; 22 N.Y.C.R.R. § 208.6(h).

### C.  Elashrafi and Bouton, on behalf of Gotham, Systematically Falsify Affidavits of Service by Claiming to Make Substitute Service on Nonexistent Relatives of Class Members

63.    Elashrafi and Bouton, on behalf of Gotham, prepare affidavits of service in the Lawsuits filed against each Class Member that they allegedly served.

64.    Elashrafi and Bouton prepare the affidavits of service using a standard form template.

65.    In virtually all of their affidavits of service, Elashrafi and Bouton swear that they effectuated substitute service under N.Y. C.P.L.R. § 308(2) by personally handing a copy of the summons and complaint to a person at the consumer's residence who identified himself or

herself as a relative of the consumer. The consumers Elashrafi and Bouton claimed to serve in this manner constitute members of the putative class.

66.     Elashrafi and Bouton sign each affidavit of service under penalty of perjury.

67.     The affidavits of service filed in the Lawsuits against Named Plaintiffs were false because they claimed to serve nonexistent relatives of the Named Plaintiffs.

68.     On information and belief, the affidavits of service filed in the Lawsuits against most or all Class Members are false.

69.     Plaintiffs' counsel, the New York Legal Assistance Group ("NYLAG"), reviewed a sample of approximately three hundred affidavits of service that were filed by Mullooly and signed by Elashrafi or Bouton on behalf of Gotham in New York City Civil Court cases in seven months of 2018 and that were available at the New York City Civil Court's Public Access Terminal.[2]

70.     In 94% of the files sampled by NYLAG, Elashrafi and Bouton claimed to have effectuated service by personally handing a copy of the summons and complaint to a relative of the consumer at the consumer's residence ("Sampled Class Members"). Of the remaining files (non-class members), 5% of the affidavits of service claimed to make personal service and less than 1% claimed to make either (1) substitute service on someone other than a "relative" or (2) "nail and mail" service.

71.     It is extremely unlikely that virtually all service completed by Elashrafi and Bouton would have been effectuated by substitute service on a relative at the consumer's residence. For these affidavits of service to be true, virtually every time that Elashrafi and

---

[2] In early 2018, the New York City Civil Court implemented a policy to scan affidavits of service and make them available to the public at the Public Access Computer Terminals at each New York City Civil Court branch. Plaintiffs' Counsel has retrieved the sampled affidavits of service from these terminals. However, because not all affidavits of service were scanned, the sample is likely underinclusive.

Bouton effectuated service: (1) the consumer did not answer their own door; (2) someone else answered the door at the consumer's residence; (3) that person was an adult; and (4) that person identified him or herself as a relative of the consumer.

72.    Approximately one-third of New York City households are comprised of one person living alone.[3]

73.    Fewer than half of all people in New York City are adults who live with a spouse or an adult relative.[4]

74.    Moreover, legitimate process servers effectuate service via personal service (that is, handing a copy of the summons and complaint to the person to be served) about half of the time—because people often answer the door at their own residences. *See, e.g.*, Decl. of Bruce Lazarus, *Sykes v. Mel S. Harris & Assocs. et al*., No. 09 Civ. 8486(DC) (S.D.N.Y), ECF No. 103.

75.    In a large majority of affidavits of service (79% of the Sampled Class Members), Elashrafi and Bouton swore that they served a "relative" of the consumer who had the same last name as the consumer.

76.    For another 16% of Sampled Class Members, Elashrafi and Bouton swore that they served a "relative" of the consumer who did not provide a name, who was listed as "John Doe" or "Jane Doe." For the remaining 5% of Sampled Class Members, Elashrafi and Bouton swore that they served a "relative" of the consumer with a different last name than the consumer.

77.    For example, Elashrafi swore that he personally handed Ms. Burks's court papers to a "relative" named "Christina Burks" and Ms. Cruz's papers to a "relative" named "Daniel Cruz."

---

[3] 2017 American Community Survey One-Year Estimates at 1, *available at* https://www1.nyc.gov/assets/planning/download/pdf/planning-level/nyc-population/acs/soc_2017acs1yr_nyc.pdf.

[4] *See id.*

78.    These affidavits of service signed by Elashrafi were false.

79.    Elashrafi did not personally hand the court papers to "Christina Burks" and "Daniel Cruz," because Plaintiffs do not have relatives with those names.

80.    Bouton, for example, similarly swore that he personally handed Ms. Cuadrado's court papers to a "relative" named "Anthony Cuadrado" and Ms. Drye's papers to a "relative" named "Richard Drye."

81.    These affidavits of service signed by Bouton were false.

82.    Bouton did not personally hand the court papers to "Anthony Cuadrado" and "Richard Drye" because Plaintiffs do not have relatives with those names.

83.    On information and belief, most, if not all, of the individuals that Elashrafi and Bouton swore that they handed the court papers to do not exist.

84.    On information and belief, Elashrafi and Bouton simply make up names of relatives to whom they claim to hand the court papers, without in fact serving the court papers on anyone.

85.    Serving process on an individual residence takes significant time, often up to a half an hour. The process server must drive to the address; get out of his or her car; gain access into the building (if it is an apartment building); go to the door and ring the doorbell or buzzer, or knock; wait for someone to answer the door; hand the summons and complaint to the person at the door; ask that person's name; record their name and physical description; leave the building; and get back in the car.

86.    In many cases, the affidavits of service filed by Elashrafi and Bouton do not allow for time for Elashrafi or Bouton to have actually served process, because the length of time between two instances of purported service is about the same as—or even less than—the time it

would take just to drive between the two locations (as estimated by NYLAG using Google Maps, using the time and day of the week of the purported service).

87.     For the affidavits of service to be true, Elashrafi and Bouton would have had to take all the steps described above—including ringing the bell, waiting for someone to answer, and taking notes on that person's name and description—in virtually no time.

88.     For example, in the affidavit of service filed in the Lawsuit against Ms. Burks, Elashrafi swore that he served Ms. Burks at 8:44p.m. on Monday, December 11th, 2017. In the affidavit of service filed in another Lawsuit, Elashrafi swore that just five minutes later, at 8:49p.m., he served Class Member Lisa Callahan (by handing the papers to her "relative," "Rudy Callahan"). Ms. Burks' and Ms. Callahan's residences are approximately a four-minute drive apart (as estimated by NYLAG using Google Maps), leaving Elashrafi only one additional minute to effectuate service.

89.     Then, in a third Lawsuit, Elashrafi swore that just seven minutes after that, at 8:56p.m., he served Class Member Kim Assenza (by handing the papers to her "relative," "Edward Assenza"). Ms. Callahan's and Ms. Assenza's residences are approximately a six-minute drive apart (as estimated by NYLAG using Google Maps), again leaving Elashrafi only one additional minute to effectuate service.

90.     On information and belief, Elashrafi did not effectuate service on Ms. Burks, Ms. Callahan, and Ms. Assenza in the span of twelve minutes, as it would have been impossible for him to have done so.

91.     As further examples:

- Elashrafi swore that on Saturday, November 17, 2018, he served Class Member Anthony Camera at 5:32p.m. (by handing papers to a "relative," "Phillip Camera") and, just eight minutes later, at 5:40p.m., he served Class Member Tina Granata (by handing the papers to a "relative," Joshua

Granata"). Mr. Camera's and Ms. Granata's residences are a nine-to-fourteen minute drive apart (as estimated by NYLAG using Google Maps), leaving Elashrafi no time to drive between locations, let alone actually effectuate service.

- On information and belief, Elashrafi did not effectuate service on Mr. Camera and Ms. Granata in the span of eight minutes; in fact, it would have been impossible for him to have done so.

- Similarly, Bouton swore that on Wednesday, October 31st, 2018, he served Class Member Jose Morales at 8:59p.m. (by handing the papers to his "relative," "Anthony Morales"), and, just five minutes later, at 9:04p.m., he served Class Member Akala Seifullah (by handing the papers to her "relative," "Khalid Seifullah"). Mr. Morales's and Ms. Seifullah's residences are approximately a four-minute drive apart (as estimated by NYLAG using Google Maps), leaving Bouton only one additional minute to effectuate service.

- On information and belief, Bouton did not effectuate service on Mr. Morales and Ms. Seifullah in the span of five minutes, as it would have been impossible for him to have done so.

92.    This has not escaped notice. One New York City Civil Court judge, in reviewing records in which Elashrafi claimed to have made substitute service in twenty-four of twenty-seven locations between approximately 7:00p.m. and 10:30p.m. in a single evening, found that "[Elashrafi's] claim . . . that in 24 of 27 initial attempts [he] found a person of suitable age and discretion and completed service and got to a new location within minutes . . . lack[s] credibility." Decision & Order (May 16, 2019) at 4, *City of New York v. Pesel Feder*, No. CV-5425-16/NY (N.Y.C. Civil Ct.).

93.    On information and belief, Elashrafi and Bouton falsify affidavits of service by in fact driving to the locations, but not actually attempting to make service at those locations. Driving to each location would allow Elashrafi and Bouton to maintain accurate GPS records, as required by N.Y.C. Admin. Code § 20-410.

16

94.     Alternatively, on information and belief, Elashrafi and Bouton do not even attempt to travel to the consumer's last known residence; instead, they simply estimate the driving time between stops.

**D. Gotham Notarizes and Reviews the Falsified Affidavits of Service and Transmits Them to Mullooly**

95.     Elashrafi and Bouton provide all affidavits of service to Gotham.

96.     Gotham notarizes all affidavits of service. All affidavits of service from the Sampled Files were notarized by Linda Forman or Robin Forman. Linda Forman is the President of Gotham.

97.     On information and belief, Gotham reviews all affidavits of service.

98.     On information and belief, after reviewing and notarizing them, Gotham transmits all affidavits of service to Mullooly.

99.     On information and belief, Gotham transmits affidavits of service to Mullooly in batches that include a number of affidavits of service from the same process server, purporting to effectuate service on or around the same date and time.

**E. Gotham, at the Direction of Mullooly, Files the Falsified Affidavits of Service without Meaningful Attorney Review**

100.    Gotham, at the direction of Mullooly, files the falsified affidavits of service in the Lawsuits against Class Members.

101.    Gotham files these affidavits of service in batches that include a number of affidavits of service from the same process server, purporting to effectuate service on or around the same date and time.

102.    On information and belief, no attorney at Mullooly meaningfully reviews the affidavits of service.

103.    If an attorney at Mullooly meaningfully reviewed the affidavits of service, he or she would notice that they are facially implausible because, as described above, virtually all the affidavits of service purport to make substitute service on a relative, and the majority purport to make substitute service on a relative of the Class Member with the same last name as the Class Member.

**F.  Mullooly Seeks and Obtains Default Judgments against Many Class Members**

104.    In many of the Lawsuits, including the Lawsuit against Ms. Burks, Mullooly files default judgment applications.

105.    Each default judgment application includes the affidavit of service.

106.    In each default judgment application, a Mullooly attorney swears, under penalty of perjury, that the Class Member "failed to appear, answer or move, and the time to do so has expired."

107.    These statements are false. The time for Class Members to appear has not even begun to run, and certainly has not expired, because the Class Members were not lawfully served.

108.    These representations are made without a reasonable basis and without investigations that could have led to a good faith belief in their truth.

109.    In many of the Lawsuits, including the Lawsuit against Ms. Burks, Mullooly successfully obtains default judgments on the basis of these default judgment applications.

**G.  When Class Members Challenge the Falsified Affidavits, Mullooly Files False Court Documents and Unduly Prolongs Legal Proceedings**

110.    Because Class Members are not lawfully served, many are unaware of the Lawsuits filed against them.

18

111.    Some Class Members, like Ms. Burks, eventually find out about the Lawsuits after judgments are entered and Mullooly attempts to collect on those judgments. Others, like Ms. Cruz, Ms. Cuadrado, and Ms. Drye, find out about the Lawsuits in other ways, and may be able to defend the Lawsuits in Court before a judgment is entered.

112.    Some Class Members, like Ms. Burks and Ms. Cuadrado, directly challenge service by filing a Motion to Vacate the Judgment, or a Motion to Dismiss, for lack of personal jurisdiction (the "Motions"). *See* N.Y. C.P.L.R. §§ 5015(a)(4); 3211(a)(8).

113.    Ms. Burks and Ms. Cuadrado filed these Motions *pro se*. On information and belief, virtually all Class Members who file such Motions do so *pro se*.

114.    In response to Class Members' Motions, Mullooly typically files opposition papers (the "Oppositions"), signed by an attorney under penalty of perjury, that contain false statements regarding service.

115.    For example, the Opposition that Mullooly filed in the Lawsuit against Ms. Burks re-attached Elashrafi's falsified affidavit of service. The Mullooly attorney swore that Ms. Burks's "assertion that she was not served is refuted by [this] affidavit of service."

116.    This statement is false. Ms. Burks was never served, and Elashrafi's falsified affidavit does not refute the fact that she was never served.

117.    Mullooly's representations in the Oppositions are made without a reasonable basis and without investigations that could lead to a good faith belief in their truth.

118.    Mullooly's filing of Oppositions without a good faith basis to do so has the effect of unduly prolonging legal proceedings against Class Members.

119.    Mullooly further prolongs legal proceedings against Class Members by refusing to dismiss Lawsuits or vacate judgments, even when Class Members present Mullooly with

credible evidence that the affidavits of service in the cases against them were false.

120.    For example, Mullooly refused to vacate the judgment against Ms. Burks even after hearing her credible testimony that she was never served, that she does not know anyone named "Christina Burks," and that she was home on the date and time that Elashrafi allegedly attempted service.

121.    Mullooly further prolongs legal proceedings against Class Members by participating in evidentiary hearings, including by calling Elashrafi and Bouton as witnesses despite their knowledge that their testimony is false.

**H. Gotham and Mullooly's Knowledge of Elashrafi and Bouton's Sewer Service**

122.    Gotham knows that Elashrafi and Bouton engage in sewer service.

123.    Mullooly knows, or should know, that Gotham, Elashrafi, and Bouton engage in sewer service.

124.    In June 2018, Mullooly and Gotham were sued in a putative class action, alleging that Mullooly routinely filed false affidavits of service, and obtained default judgments on the basis of these false affidavits of service. *Jakubowitz v. Mullooly, Jeffrey, Rooney & Flynn, LLP et al.*, No. 18 Civ. 3500 (E.D.N.Y.).[5]

125.    As detailed below, Gotham and Mullooly are aware of challenges to the validity of service raised by Named Plaintiffs. *See infra* ¶¶ 178-98, 244-46, 272-78.

126.    In addition to Ms. Burks, Ms. Cuadrado, and Ms. Drye, many other consumers have challenged the validity of service by Elashrafi and Bouton.

_____

[5] This action quickly settled, with respect to only the individual Plaintiff's claims, and was voluntarily dismissed. ECF Nos. 8, 10.

127.    Gotham and Mullooly are aware that many consumers have challenged service by Elashrafi.

128.    Gotham and Mullooly are aware that many consumers have challenged service by Bouton.

129.    For example, in April 2019, Class Member Tina Granata filed a motion to vacate the default judgment against her. Ms. Granata stated that she was never served, and that Elashrafi's affidavit of service, in which he swore that he served a "relative" named "Joshua Granata," was false. The judge ordered an evidentiary hearing regarding service. Neither Mullooly nor Bouton appeared at the evidentiary hearing, so the Judge ordered that the judgment against Ms. Granata be vacated and the case dismissed.

130.    Gotham was aware of this hearing, as Gotham reported it to DCWP.

131.    Mullooly was aware of this hearing, as Mullooly litigated against Ms. Granata.

132.    As another example, in June 2017, Class Member Nadia Francis filed a motion to dismiss the action against her. Ms. Francis stated that she was never served, and that Bouton's affidavit of service, in which he swore that he served a "relative" named "Emmanuel Francis," was false. The judge ordered an evidentiary hearing regarding service. Ms. Francis settled the case on the date of the evidentiary hearing.

133.    Gotham was aware of this hearing, as Gotham reported it to DCWP.

134.    Mullooly was aware of this hearing, as Mullooly litigated against Ms. Francis.

135.    As another example, in March 2019, Class Member Akala Seifullah filed a motion to dismiss the action against her. Ms. Seifullah stated that she was never served, and that Bouton's affidavit of service, in which he swore that he served a "relative" named "Khalid

Seifullah," was false. The judge denied Ms. Seifullah's motion, but this denial was overturned by the Appellate Term, which ordered an evidentiary hearing (scheduled for March 2020).

136.    Gotham was aware of this hearing, as Gotham reported it to DCWP.

137.    Mullooly was aware of this hearing, as Mullooly litigated against Ms. Seifullah.

138.    Moreover, Gotham has directly violated rules governing process serving agencies and made false statements to DCWP.

139.    In 2014, Gotham entered into a consent order with DCWP, and paid a fine, to settle charges that it failed to report the results of hearings regarding service in at least eight cases, and in at least four cases, it failed to report the existence of the hearing at all.

140.    However, Gotham has falsely reported results of hearings regarding service to DCWP in at least two cases since it entered into the 2014 consent order.

141.    On July 14, 2017, the date of the evidentiary hearing in the case filed against Ms. Drye, Gotham reported to DCWP that the "[t]raverse was . . . [o]verruled (proper service)."

142.    Gotham's statement was false. As of July 14, 2017, the judge had not yet decided the validity of service to Ms. Drye. Three days later, on July 17, 2017, the judge issued an order dismissing the case against Ms. Drye for lack of personal jurisdiction because "service was improper," finding that "Bouton's . . . testimony lacked credibility."

143.    Similarly, on April 11, 2019, Gotham reported to DCWP that the "[t]raverse was . . . [o]verruled (proper service)" in *The Finance Committee of Saints Philip and James School v. Stacy Smith et al.*, No. CV-9581-18/BX (N.Y.C. Civil Ct.).

144.    Gotham's statement was false. On April 11, 2019, the Parties settled *The Finance Committee of Saints Philip and James School v. Stacy Smith et al*, but Gotham did *not* select the option on the form it submitted to DCWP to indicate that the case settled.

22

**I.    Defendants Reap Profits from Their Illegal Sewer Service Scheme**

145.    Defendants' scheme to falsify affidavits of service is mutually beneficial.

146.    On information and belief, Elashrafi, Bouton, and Gotham are each paid a flat fee for each case in which service is "made."

147.    By failing to actually serve Class Members, but claiming to have done so, Elashrafi, Bouton, and Gotham artificially inflate the number of cases in which they purportedly effectuate service, thereby increasing their own profits.

148.    On information and belief, in some cases, Mullooly is paid a percentage of the funds the firm is able to collect in connection with debt collection Lawsuits.

149.    On information and belief, in other cases, Mullooly is paid a set sum by its clients to collect on a specific number of cases. Mullooly has an incentive to lower the costs of litigation, thereby increasing profits. Default judgments require minimal litigation work by attorneys and increase the likelihood that Mullooly will collect money from consumers. Sewer service increases the rate of default judgments.

150.    Hiring process servers who engage in sewer service allows Mullooly to increase its own profits by obtaining default judgments against Class Members. Mullooly can collect on these default judgments on behalf of its clients, including through wage garnishments and bank levies, for at least twenty years.

**J.    Defendants' Scheme Causes Harm to Plaintiffs and Class Members**

151.    Defendants' unlawful scheme harms Class Members.

152.    On information and belief, many Class Members remain unaware of the Lawsuits against them and face the risk of future collections.

153.    On information and belief, even when Class Members do find out about the Lawsuits or judgments against them, many of them are unable to figure out how to challenge the judgments, defend the cases, and/or how to challenge the unlawful service.

154.    On information and belief, some Class Members contact Mullooly to inquire about the case, and accept settlement offers, and others defend the cases unsuccessfully. As a result, Defendants are able to obtain funds from these Class Members on the basis of unlawful service.

155.    Harms to Class Members include, but are not limited to: deprivation of funds (temporary or permanent) due to executions or settlements; time and money spent to appear at multiple court dates and otherwise challenge the Lawsuits and unlawful service, including lost wages due to missed work, postage, photocopying, transportation, and childcare; and actual and emotional damages.

156.    Defendants' actions are ongoing and will cause further harm to Class Members absent Court intervention.

### FACTS CONCERNING NAMED PLAINTIFFS

*Jackie Burks*

157.    Plaintiff Jackie Burks is a thirty-four-year-old resident of Staten Island, New York. Ms. Burks works full time as a lab aide at Northwell Health in Staten Island.

158.    On or after March 5, 2019, Ms. Burks received in the mail a Notice of Garnishment and Income Execution from New York City Marshal Ronald Moses notifying her that she owed over $3,300, and her wages were going to be garnished to satisfy a judgment in *Unifund CCR, LLC v. Jackie Burks* ("*Unifund v. Burks*"), Index Number CV-5425-17/RI, in New York City Civil Court, Richmond County ("Richmond Civil Court").

159.    Before receiving the Notice of Garnishment and Income Execution, Ms. Burks had never heard of *Unifund v. Burks*. She was never served with a summons and complaint in that action. She had no other notice of the action or the judgment.

160.    Unbeknownst to Ms. Burks, Mullooly had filed *Unifund v. Burks* over a year earlier, on November 13, 2017, to collect on a debt Ms. Burks purportedly owed to Unifund, stemming from an allegedly unpaid credit card from First National Bank of Omaha.

161.    Mullooly hired Gotham to serve the *Unifund v. Burks* summons and complaint on Ms. Burks.

162.    On December 13, 2017, Elashrafi, on behalf of Gotham, signed a sworn affidavit of service, in which he claimed to have served Ms. Burks with the *Unifund v. Burks* summons and complaint at 8:44p.m. on December 11, 2017 by visiting Ms. Burks's home and handing a copy to "Christina Burks," who "identified herself as [a] relative of [Ms. Burks]." Elashrafi described "Christina Burks" as a thirty-five-year-old female with tan skin and black hair, 5'4" tall and 140 pounds.

163.    Elashrafi's affidavit of service is false.

164.    The "Christina Burks" named in the affidavit of service does not exist.

165.    Ms. Burks does not have any relatives named "Christina Burks" and does not know anyone named "Christina Burks."

166.    There was no one matching the description of "Christina Burks" who lived at Ms. Burks's home at the time of alleged service.

167.    Moreover, if Elashrafi had actually attempted to serve the summons and complaint at 8:44p.m. on Monday, December 11, 2017, he would have reached Ms. Burks.  Ms. Burks was a full-time college student who lived with her young children. Each weekday, Ms.

Burks left school by 5:00p.m. to pick up her children from daycare, and then brought them home for dinner and put them to bed. Ms. Burks lived in an apartment building that required a buzzer for entry, and she would have known if anyone had tried to visit her apartment, because the buzzer was very loud and would have woken her sleeping children.

168.    In the affidavit of service, Elashrafi also claimed that he later mailed the summons and complaint to Ms. Burks.

169.    On information and belief, this statement was false.

170.    Ms. Burks did not receive the summons and complaint in the mail.

171.    On December 18, 2017, Gotham, on behalf of Mullooly, filed Elashrafi's affidavit of service in *Unifund v. Burks*.

172.    On April 30, 2018, Mullooly filed a motion for a default judgment in *Unifund v. Burks*, which included Elashrafi's affidavit of service.

173.    In the application for default judgment, a Mullooly attorney swore, under penalty of perjury, that Ms. Burks "failed to appear, answer or move, and the time to do so has expired."

174.    This statement is false. The time for Ms. Burks to appear had not expired, because Ms. Burks was never served.

175.    On June 19, 2018, a default judgment was entered against Ms. Burks in the amount of $2,998.58.

176.    On February 25, 2019, Mullooly issued the Income Execution later received by Ms. Burks.

177.    After she received the March 5, 2019 Notice of Garnishment and Income Execution from Mullooly, *see supra* ¶ 158, Ms. Burks went to the Richmond Civil Court to inquire about the garnishment notice and the court clerk told her that Unifund could garnish her

26

wages unless she challenged the judgment. She called her brother, who helped her figure out how to file the court papers to do so.

178.    On March 11, 2019, Ms. Burks filed a *pro se* Motion to Vacate the *Unifund v. Burks* judgment in Richmond Civil Court. She also filed an affidavit stating that she was never served and that she had not known about the summons and complaint. Her affidavit further stated that she believed she was a victim of identity theft and that she had no business relationship with Unifund.

179.    On March 27, 2019, the first court date for Ms. Burks's motion, Ms. Burks was represented by NYLAG's Consumer Protection Unit in a limited capacity through the New York City Civil Court's Volunteer Lawyer for a Day ("VLFD") program.[6]

180.    On or about that same date, Mullooly filed and served an Opposition to Ms. Burks's Motion, sworn under penalty of perjury. The Opposition attached Elashrafi's affidavit of service, and the Mullooly attorney swore that Ms. Burks's "assertion that she was not served is refuted by [this] affidavit of service."

181.    On that court date, the judge ordered an evidentiary hearing as to whether Ms. Burks was served with the summons and complaint.

182.    On June 19, 2019, the second court date for Ms. Burks's motion, the evidentiary hearing was held. Ms. Burks was represented by NYLAG's Consumer Protection Unit for the hearing and the remainder of the case.

183.    During the June 19, 2019 evidentiary hearing, Ms. Burks testified under oath that she was not served with the summons and complaint and that she did not know anyone named

_____

[6] N.Y. Unified Court Sys., *Volunteer Lawyer for the Day Program- Consumer Debt*, *available at* https://www.nycourts.gov/COURTS/nyc/civil/vlfd_civil.shtml.

"Christina Burks." She further testified that she would have been home at the alleged time of service, with sleeping children, and that she would have known if anyone had rung the buzzer of her apartment, because the children would have woken up.

184.    At the June 19, 2019 evidentiary hearing, Mullooly called Elashrafi as a witness, elicited his testimony, and cross-examined Ms. Burks.

185.    Also during the June 19, 2019 evidentiary hearing, Elashrafi testified under oath that he had in fact handed a copy of the summons and complaint to a "Christina Burks" at Ms. Burks's residence at 8:44p.m. on December 11, 2017.

186.    This testimony was false.

187.    Although New York City regulations require any process server testifying at such a hearing to bring all records relevant to service, 22 N.Y.C.R.R. § 208.29, Elashrafi did not bring his logbook to the hearing.

188.    Elashrafi testified that he was unable to bring his logbook to the hearing because it was being held by the New York City Department of Consumer and Worker Protection ("DCWP"), for an audit.

189.    This testimony was also false.

190.    Elashrafi gave other false testimony at the hearing, including falsely stating that he had reported the hearing to the DCWP within 10 days of being notified of it, as required by N.Y.C. Admin. Code § 20-406.2.

191.    Shortly after the hearing, DCWP confirmed to NYLAG that, at the time of the traverse hearing, DCWP was neither holding nor auditing Elashrafi's logbook.

192.    On June 26, 2019, NYLAG, on behalf of Ms. Burks, filed a motion for a directed verdict or, in the alternative, for a new evidentiary hearing, based on Elashrafi's testimony regarding the logbook.

193.    On July 15, 2019, the third court date for *Unifund v. Burks,* Mullooly filed and served an Opposition to Ms. Burks's second motion, sworn under penalty of perjury. In this Opposition, Mullooly stated that current counsel was "out of order in declaring the process server's testimony is a lie."

194.    On July 31, 2019, the judge found that "the Court [had been] presented with information that directly contradict[ed] [Elashrafi's] testimony," and ordered that the evidentiary hearing be re-opened.

195.    On September 18, 2019, the fourth court date for *Unifund v. Burks*, the second part of the evidentiary hearing was held. A DCWP employee testified that DCWP was not in possession of Elashrafi's logbook at the time of the first part of the hearing.

196.    On November 15, 2019, the judge issued an order vacating the *Unifund v. Burks* judgment and dismissing the action, after finding that "[Unifund] had failed to withstand the challenges to Mr. Elashrafi's credibility presented by [Ms. Burks] and, accordingly, the Court finds that [Unifund] failed to meet its burden of proving that service was properly effected upon [Ms. Burks]."

197.    As a result of Defendants' actions, Ms. Burks has experienced emotional and financial harm.

198.    Because Ms. Burks had started a new job just before receiving the income execution notice, she had to make special arrangements to take time off of work during her probationary period to come to her first court date. Ms. Burks had to go to Richmond Civil Court

five times during the span of the case, each time driving approximately thirty minutes each way. Each time Ms. Burks missed work to go to court, she had to make up the hours by working over the weekend, and had to rely on family members to watch her children so she could do so. During one court appearance, because she had no other available childcare, Ms. Burks had to leave the courthouse in the middle of the day to pick one of her children up from school, and then bring her child back to the courtroom with her.

199.    Ms. Burks had expenditures in connection with the case, including photocopying, printing, postage, and gas.

200.    Ms. Burks felt overwhelmed and stressed when she received the garnishment notice and had to appear in court to try to vacate the judgment. As a single parent to three young children, Ms. Burks was afraid that the garnishment would mean that she could not provide for her family. The stress caused by the garnishment and lawsuit exacerbated Ms. Burks' underlying chronic health condition, and caused changes to her eating and sleeping habits.

*Brunilda Pagan Cruz*

201.    Plaintiff Brunilda Pagan Cruz is a sixty-year-old resident of the Bronx, New York. Ms. Cruz is not currently working, but is scheduled to begin work as a babysitter next month. Ms. Cruz primarily speaks Spanish and is often not comfortable communicating in English.

202.    On or around March 1, 2019, Ms. Cruz was contacted by a neighbor who lives upstairs in her building, who told Ms. Cruz that she had received a letter in the mail for Ms. Cruz. The letter contained the summons and complaint for *Unifund CCR LLC v. Brunilda Pagan Cruz* ("*Unifund v. Cruz*"), Index Number CV-1146-19/BX, in New York City Civil Court, Bronx County ("Bronx Civil Court").

203.    Before receiving the letter from her neighbor, Ms. Cruz had never heard of *Unifund v. Cruz*. She was never served with a summons and complaint in that action. She had no other notice of the action or the judgment.

204.    Unbeknownst to Ms. Cruz, Mullooly had filed *Unifund v. Cruz* on January 22, 2019, to collect on a debt Ms. Cruz purportedly owed to Unifund, a debt buyer. The complaint claimed that Ms. Cruz owed Unifund a debt stemming from an allegedly unpaid Citibank credit card account.

205.    Mullooly hired Gotham to serve the *Unifund v. Cruz* summons and complaint on Ms. Cruz.

206.    On February 14, 2019, Elashrafi, on behalf of Gotham, signed a sworn affidavit of service, in which he claimed to have served Ms. Cruz with the *Unifund v. Cruz* summons and complaint at 6:37p.m. on February 13, 2019 by visiting Ms. Cruz's home and handing a copy to "Daniel Cruz," who "identified himself as [a] relative of [Ms. Cruz]." Elashrafi described "Daniel Cruz" as a thirty-year-old male with brown skin and black hair, 5'9" tall and 170 pounds.

207.    Elashrafi's affidavit of service is false.

208.    The "Daniel Cruz" named in the affidavit of service does not exist.

209.    Ms. Cruz does not have any relatives named "Daniel Cruz" and does not know anyone named "Daniel Cruz."

210.    There was no one matching the description of "Daniel Cruz" who lived at Ms. Cruz's home at the time of alleged service.

211.    Elashrafi's affidavit of service also claimed that he later mailed the summons and complaint to Ms. Cruz.

212.    On information and belief, this statement was false.

213.    Ms. Cruz did not receive the summons and complaint in the mail.

214.    On February 21, 2019, Gotham, on behalf of Mullooly, filed Elashrafi's affidavit of service in Bronx Civil Court.

215.    On March 7, 2019, after receiving the mailing from her neighbor, Ms. Cruz went to the Bronx Civil Court to try to figure out how to defend the *Unifund v. Cruz* case.  She received assistance preparing a *pro se* answer from the Civil Legal Advice and Resource Office ("CLARO"),[7] which provides free assistance preparing court papers to *pro se* consumers.

216.    On March 8, 2019, Ms. Cruz returned to the Bronx Civil Court and filed her *pro se* answer to the *Unifund v. Cruz* complaint in Bronx Civil Court.

217.    In her *pro se* answer, Ms. Cruz stated that she "received the Summons and Complaint, but service was not correct as required by law." She also stated that she did not owe the debt to Unifund.

218.    The first court date for *Unifund v. Cruz* was set for April 2, 2019. However, due to health problems, Ms. Cruz was unable to travel to the Bronx Civil Court on April 2, 2019.

219.    Once her health improved, Ms. Cruz returned to the Bronx Civil Court Clerk's Office to explain why she had missed the April 2, 2019 court date and request a new date.  The Clerk's Office set the second court date for *Unifund v. Cruz* for June 7, 2019.

220.     On June 7, 2019, the second court date for *Unifund v. Cruz*, Ms. Cruz was represented by NYLAG's Consumer Protection Unit in a limited capacity through VLFD. The case was adjourned for a third court date.

---

[7] *See* www.claronyc.org; *see also* N.Y. Unified Court Sys., *New York State Court Access to Justice Program*, *available at* http://www.nycourts.gov/ip/nya2j/.

221.    On October 8, 2019, the third court date for *Unifund v. Cruz*, Ms. Cruz was represented by NYLAG's Consumer Protection Unit in a limited capacity through VLFD.  The case was set for trial. Unifund did not appear with a witness to prove its case, so Mullooly agreed to discontinue *Unifund v. Cruz*.

222.    As a result of Defendants' actions, Ms. Cruz has experienced emotional and financial harm.

223.    Ms. Cruz had to go to Bronx Civil Court four times during the span of the case. To do so, Ms. Cruz had to reschedule several physical therapy appointments. Because of her health problems, Ms. Cruz was unable to use public transportation to travel to the courthouse and instead had to spend more than $120 to travel by cab (approximately $30 round trip each time), so that she could sit with her leg propped up on the rear seat.

224.    Ms. Cruz had other expenditures in connection with the case, including postage.

225.    Ms. Cruz felt very nervous and anxious after receiving the court papers from her neighbor. She was especially scared because she had never heard of Unifund, was not aware of owing them any money, and could not afford to pay the debt that she was alleged to owe. Ms. Cruz felt very anxious and felt like she was suffocating every time she had to go to the Bronx Civil Court.

226.    Because she is not comfortable communicating in English, Ms. Cruz worried that she would not understand what was happening during her court dates. Due to her stress regarding the lawsuit, Ms. Cruz slept very little during this period, experienced a significant loss of appetite, had trouble doing everyday activities like cooking, and experienced a significant increase in the frequency and severity of migraine headaches, for which she received treatment.

33

*Venus Cuadrado*

227.    Plaintiff Venus Cuadrado is a forty-three-year-old resident of Ansonia, Connecticut.

228.    In August 2019, Ms. Cuadrado received a call from her mother, who told Ms. Cuadrado that she had received in the mail at her apartment in the Bronx a letter that was addressed to Ms. Cuadrado.

229.    Ms. Cuadrado drove over two hours each way from her home in Connecticut to her mother's apartment in the Bronx to retrieve the letter, which contained the summons and complaint for *Unifund CCR LLC v. Venus Cuadrado* ("*Unifund v. Cuadrado*"), Index Number CV-14246-19/BX, in Bronx Civil Court.

230.    Before receiving the phone call from her mother, Ms. Cuadrado had never heard of *Unifund v. Cuadrado*. She was never served with a summons and complaint in that action. She had no other notice of the action.

231.    Unbeknownst to Ms. Cuadrado, Mullooly had filed *Unifund v. Cuadrado* on August 2, 2019, to collect on a debt Ms. Cuadrado purportedly owed to Unifund. The complaint claimed that Ms. Cuadrado owed Unifund a debt stemming from an allegedly unpaid account from a company called "Webbank."

232.    Mullooly hired Gotham to serve the *Unifund v. Cuadrado* summons and complaint on Ms. Cuadrado.

233.    On August 12, 2019, Bouton, on behalf of Gotham, signed a sworn affidavit of service, in which he claimed to have served Ms. Cuadrado with the *Unifund v. Cuadrado* summons and complaint at 2:27p.m. on August 10, 2019 by visiting 575 Castle Hill Avenue, Apartment 4C, Bronx, NY 10473 and handing a copy to "Anthony Cuadrado," who "identified

himself as [a] relative of [Ms. Cuadrado]." Bouton described "Anthony Cuadrado" as a twenty-two-year-old male with tan skin and black hair, 5'7" tall and 170 pounds.

234.    Bouton's affidavit of service is false.

235.    The "Anthony Cuadrado" named in the affidavit of service does not exist.

236.    Ms. Cuadrado does not have any relatives named "Anthony Cuadrado" and does not know anyone named "Anthony Cuadrado."

237.    Moreover, Ms. Cuadrado does not live at the service address (575 Castle Hill Avenue, Apartment 4C, Bronx, NY 10473). That address is Ms. Cuadrado's mother's apartment. Ms. Cuadrado moved out of that apartment to Connecticut in 2015.

238.    No one named "Anthony Cuadrado" lives at the service address.

239.    No one at the service address was handed the summons and complaint.

240.    If Bouton had actually attempted to serve the summons and complaint at the service address, he would have learned that Ms. Cuadrado did not live there, and thus that any service at this address would not be lawful service.

241.    Gotham, on behalf of Mullooly, filed Bouton's affidavit of service in Bronx Civil Court.

242.    On August 23, 2019, Ms. Cuadrado drove to the Bronx a second time and filed a *pro se* answer to the *Unifund v. Cuadrado* complaint in the Bronx Civil Court. In her answer, she stated that she "received the Summons and Complaint, but service was not correct as required by law." Ms. Cuadrado also stated that she did not owe the debt to Unifund.

243.    On Ms. Cuadrado's first court date, September 27, 2019, she drove over two hours from her home in Connecticut to reach the courthouse in the Bronx. When she arrived at the courthouse, she had trouble finding parking. Ms. Cuadrado appeared at this court date *pro se*.

By the time she arrived at the courtroom, all Ms. Cuadrado could do was to get an adjournment of *Unifund v. Cuadrado* for a second court date, scheduled for February 5, 2020.

244.    On January 27, 2020, with the assistance of NYLAG, Ms. Cuadrado served on Mullooly a *pro se* motion to dismiss *Unifund v. Cuadrado* for lack of personal jurisdiction. Ms. Cuadrado attached six pieces of proof to her motion showing that she lived in Connecticut. Ms. Cuadrado's sworn affidavit in support of her motion also explained that "[T]he affidavit of service is false. The process server claims he handed the papers to a person named 'Anthony Cuadrado' who . . . said he was my 'relative,' but this is not true. None of my relatives have that name, no one who lives at the service address has that name, and no one who lives at the service address was ever handed the court papers."

245.    On the next day, Mullooly sent Ms. Cuadrado a letter stating that it had reviewed her motion to dismiss, and agreed to discontinue *Unifund v. Cuadrado*.

246.    On January 31, 2020, Ms. Cuadrado signed the stipulation of discontinuance, which was later filed with the court.

247.    As a result of Defendants' actions, Ms. Cuadrado has experienced emotional and financial harm.

248.    On three separate occasions, Ms. Cuadrado had to drive over two hours each way to the Bronx. On her first court date, Ms. Cuadrado had no childcare for her toddler, and so had to make the long round-trip drive with the child and bring the child into court—and then rush home to meet her other children's school bus.

249.    Ms. Cuadrado had expenditures in connection with the case, including photocopying, printing, notary costs, postage, parking, and gas.

250.    Ms. Cuadrado felt overwhelmed and stressed. She was confused by the case, did not understand why she was sued, and did not know what to expect. Ms. Cuadrado experienced difficulty sleeping and some anxiety. Ms. Cuadrado felt stressed each time that she had to go to the Bronx to deal with the case, as it was difficult as a mother of three young children to arrange for their care.

### Rhonda Drye

257.    Plaintiff Rhonda Drye is a sixty-one-year-old resident of the Bronx, New York. Ms. Drye works as cook at a local college.

258.    On or after April 28, 2017, Ms. Drye's nephew told her that Kenneth Banks, a neighbor who lived in a different apartment in Ms. Drye's building, had papers for her. Ms. Drye picked up the papers from Mr. Banks, which were the summons and complaint for *Unifund CCR LLC v. Rhonda Drye* ("*Unifund v. Drye*"), Index Number CV-4975-17/BX, in Bronx Civil Court.

259.    On April 28, 2017, Mr. Banks saw a man come to their apartment building and repeatedly ring the buzzer to gain entrance to the building, not realizing that the door was in fact unlocked. Mr. Banks saw that after the man got frustrated that he could not gain access to the building, he threw the papers on the floor in front of the intercom and left. Mr. Banks then picked up the papers, realized they were for Ms. Drye, and notified Ms. Drye's nephew that he had papers for her to pick up.

260.    Before receiving the papers from Mr. Banks, Ms. Drye had never heard of *Unifund v. Drye*. She was never served with a summons and complaint in that action. She had no other notice of the action.

261.    Unbeknownst to Ms. Drye, Mullooly had filed *Unifund v. Drye* on April 18, 2017, to collect on a debt Ms. Drye purportedly owed to Unifund. The complaint claimed that Ms.

Drye owed Unifund a debt stemming from an allegedly unpaid account from a company called "Webbank."

262.    Mullooly hired Gotham to serve the *Unifund v. Drye* summons and complaint on Ms. Drye.

263.    On April 28, 2017, Bouton, on behalf of Gotham, signed a sworn affidavit of service, in which he claimed to have served Ms. Drye with the *Unifund v. Drye* summons and complaint at 11:46 a.m. on that same day by visiting Ms. Drye's home and handing a copy to "Richard Drye," who "identified himself as [a] relative of [Ms. Drye]." Bouton described "Richard Drye" as a thirty-nine-year-old male with black skin and black hair, 5'11" tall and 210 pounds.

264.    Bouton's affidavit of service is false.

265.    The "Richard Drye" named in the affidavit of service does not exist.

266.    Ms. Drye does not have any relatives named "Richard Drye" and does not know anyone named "Richard Drye."

267.    There was no one matching the description of "Richard Drye" who lived at Ms. Drye's home at the time of alleged service.

268.    Mr. Banks does not match the description of "Richard Drye."

269.    Bouton's affidavit of service also claimed that he later mailed the summons and complaint to Ms. Drye.

270.    On information and belief, this statement was false.

271.    Ms. Drye did not receive the summons and complaint in the mail.

272.    On May 2, 2017, Gotham, on behalf of Mullooly, filed Bouton's affidavit of service in Bronx Civil Court.

273.    On May 16, 2017, Ms. Drye filed a *pro se* answer to the *Unifund v. Drye* complaint in the Bronx Civil Court. In her answer, she stated that she "received the Summons and Complaint, but service was not correct as required by law." Ms. Drye's answer also stated "I DONT KNOW WHAT CREDIT CARD THIS IS."

274.    On Ms. Drye's first court date, June 6, 2017, Ms. Drye was represented by NYLAG's Consumer Protection Unit in a limited capacity through VLFD. Ms. Drye told Mullooly, and the Court, that she had not been properly served. After the parties held a discussion with the Judge on the record, they agreed to hold an evidentiary hearing regarding service.

275.    On July 14, 2017, at that evidentiary hearing, Ms. Drye appeared *pro se*.

276.    At the hearing, Mr. Banks testified that he saw Bouton try to gain access to the building by repeatedly ringing the buzzer, and get frustrated when he thought he could not gain access. Mr. Banks further testified that he saw Bouton throw the papers on the floor by the building's intercom, and that Mr. Banks later picked them up from the floor.

277.    At the hearing, Ms. Drye testified that she got the papers from Mr. Banks, that she does not know anyone named "Richard Drye," and that the only person who lived at her apartment at the time of service was her adult child, who does not match the individual described in the affidavit of service and did not ever receive the court papers.

278.    At the hearing, Bouton testified that he made service by delivering the papers to "Richard Drye" at Ms. Drye's apartment. Bouton further testified that he does not generally make contemporaneous entries in his logbook, but that he usually fills out the information in the logbook when he gets home at the end of the day. Bouton did not testify as to how he gained access to the apartment building or where in the building Ms. Drye's apartment was located.

279.    On July 17, 2017, the Judge issued an order dismissing *Unifund v. Drye* for lack of personal jurisdiction. The Judge found both Ms. Drye's and Mr. Banks's "testimony to be credible, and that Bouton's contradictory testimony lacked credibility." Based on her evaluation of the testimony, the Judge found that:

> [S]ervice was improper. Bouton did not go to the apartment and deliver the papers to an individual named Richard Drye. Bouton instead left them on the ground outside of the building never even making his way to the apartment where [Ms. Drye] resides. There was no testimony that mailing was ever done by Bouton or anyone else. Bouton acknowledged that he failed to maintain contemporaneous records, and his log book did not even indicate which apartment he went to.

280.    As a result of Defendants' actions, Ms. Drye has experienced emotional and financial harm.

281.    Ms. Drye had to go to Bronx Civil Court three times during the span of the case. Ms. Drye had to miss a full day of work, without pay, for each court date she attended.

282.    Ms. Drye had expenditures in connection with the case, including photocopying, postage, and transportation.

283.    Ms. Drye was stressed and frustrated by her experience defending the lawsuit, and was particularly upset by hearing Bouton's testimony.

## CLASS ACTION ALLEGATIONS

284.    Plaintiffs bring this action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of a Class consisting of:

> All natural persons who have been or will be sued by Mullooly in New York City Civil Court cases in which an affidavit of service has been or will be filed, stating that Elashrafi or Bouton, on behalf of Gotham, effectuated service by delivering the papers to a person identified as a relative of the person to be served.

285.    The class is so numerous that joinder of all Class Members in this action would be impracticable.

286.    Each year, Elashrafi and Bouton, on behalf of Gotham, purport to serve process in hundreds of New York City Civil Court cases filed by Mullooly by handing the summons and complaint to a relative of the person to be served.

287.    The precise number and identity of Class Members is contained within Defendants' business and litigation records.

288.    Defendants have acted and continue to act in a similar manner toward to each member of the Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

289.    Class members present common questions of law and fact and these questions predominate over any individual questions.

290.    The common questions of fact include, but are not limited to whether Defendants prepared and filed false form affidavits of service; what review, if any, Gotham and Mullooly performed of the affidavits of service; and whether Mullooly made false statements in court filings.

291.    The common questions of law include, but are not limited to: whether Defendants' affidavits of service were false or misleading; whether Mullooly conducted meaningful review of the affidavits of service; and whether Defendants' collection practices are unfair, deceptive, or misleading in violation of the FDCPA, New York G.B.L. § 349, and N.Y.C. Admin. Code § 20-409.2.

292.    The claims of the Named Plaintiffs are typical of the claims of the Class. Defendants acted in the same manner toward Named Plaintiffs and the Class as a whole,

including by failing to lawfully serve them with process, preparing nearly identical form affidavits of service purporting to have effectuated service on a relative, and filing those affidavits with the Court.

293.    The Named Plaintiffs will adequately and fairly protect the interests of all members of the proposed Class because they have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed Class.

294.    The Named Plaintiffs are represented by NYLAG. Attorneys at NYLAG are experienced in complex federal litigation, class action litigation, and consumer defense litigation.

295.    The common questions of law and fact predominate in this action.

296.    A class action is the superior method for a fair and efficient adjudication of this matter in that Defendants have acted and continue to act in the same manner toward the Class as a whole and a class action will avoid numerous separate actions by Class Members that would unduly burden the courts and create the possibility of inconsistent decisions.

297.    Moreover, it would be impracticable for Class Members, who are, on information and belief, primarily low-income individuals, to obtain legal counsel on an individual basis to bring claims of the type raised in this action. Hence their rights under the law may well be meaningless without certification of a class action seeking common redress.

298.    Final injunctive and declaratory relief is thus appropriate as to the Class as a whole.

## FIRST CAUSE OF ACTION
Violation of the FDCPA, 15 U.S.C. §§ 1629e, 1692f
Against All Defendants

299.    The FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

300. The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

301. Defendants violate the FDCPA, §§ 1692e, 1692f, by making false, deceptive, and misleading representations and engaging in unfair and unconscionable practices. Defendants' violations include, but are not limited to:

a. Failing to lawfully effectuate service of process;

b. Preparing and signing false affidavits of service;

c. Filing false affidavits of service;

d. Filing affidavits of service and other court documents without meaningful attorney review;

e. Filing default judgment applications that contained false statements;

f. Filing other court documents, such as opposition papers, that contained false statements; and

g. In bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates.

302. Defendants' wrongful and deceptive acts have caused and continue to cause injury and damages to Plaintiffs and putative Class Members and unless enjoined, will cause further injury.

303. As a direct and proximate result of Defendants' violations, Plaintiffs and Class Members have suffered and continue to suffer compensable harm and are entitled to recover actual and statutory damages, costs, and attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>
Violation of N.Y. Gen. Bus. § 349
Against All Defendants

304. New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business . . . in this state" and provides that "any person who has been injured

by reason of any violation of this section may bring an action in his own name" for injunctive

relief, damages, and attorneys' fees.

305.    Defendants violate N.Y. Gen. Bus. § 349 by engaging in deceptive acts and

practices in the conduct of their business. Defendants' violations include, but are not limited to:

a.  Failing to lawfully effectuate service of process;

b.  Preparing and signing false affidavits of service;

c.  Filing false affidavits of service;

d.  Filing affidavits of service and other court documents without meaningful attorney review;

e.  Filing default judgment applications that contained false statements;

f.  Filing other court documents, such as opposition papers, that contained false statements; and

g.  In bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates.

306.    Defendants' actions are consumer oriented and had a broad impact on New York

consumers at large.

307.    Defendants commit the above-described acts willfully and/or knowingly.

308.    Defendants' wrongful and deceptive acts have caused injury and damages to

Plaintiffs and putative Class Members and unless enjoined, will cause further injury.

309.    As a direct and proximate result of Defendants' violations, Plaintiffs and putative

Class Members have suffered and continue to suffer compensable harm and are entitled to

recover actual and treble damages, costs, and attorneys' fees.

**THIRD CAUSE OF ACTION**
Violation of N.Y.C. Admin. Code § 20-409.2
Against Defendants Gotham, Elashrafi, and Bouton

310.    New York City Administrative Code § 20-409.2 states that "Any person injured

by the failure of a process server to act in accordance with the laws and rules governing service

44

of process in New York state, including this subchapter and regulations promulgated thereunder, shall have a cause of action against such process server and process serving agency, which distributed or assigned process for service, in any court of competent jurisdiction."

311.    New York City Administrative Code § 20-409.2 allows individuals to recover compensatory damages, punitive damages (for willful failure to service process only), injunctive and declaratory relief, costs, and attorneys' fees.

312.    Defendants Gotham, Elashrafi, and Bouton violate New York City Administrative Code § 20-409.2 by failing to act in accordance with the laws and rules governing service of process in New York state. Defendants' violations include, but are not limited to:

   a.  Failing to lawfully effectuate service of process;

   b.  Preparing and signing false affidavits of service;

   c.  Filing false affidavits of service;

   d.  Filing affidavits of service and other court documents without meaningful attorney review;

   e.  Filing default judgment applications that contained false statements;

   f.  Filing other court documents, such as opposition papers, that contained false statements; and

   g.  In bad faith, unduly prolonging legal proceedings and requiring Class Members to appear at unnecessary court dates.

313.    Defendants commit the above-described acts willfully.

314.    Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiffs and putative Class Members and unless enjoined, will cause further injury.

315.    As a direct and proximate result of these violations of New York City Administrative Code § 20-409.2, Plaintiffs and putative Class Members have suffered and continue to suffer compensable harm and are entitled to recover compensatory and punitive damages, costs, and attorneys' fees.

45

WHEREFORE, Plaintiffs request that this Court enter judgment jointly and severally as against all Defendants:

a.   Certifying this case as a class action, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, with a Class defined as:

All natural persons who have been or will be sued by Mullooly in New York City Civil Court cases in which an affidavit of service has been or will be filed, stating that Elashrafi or Bouton, on behalf of Gotham, effectuated service by delivering the papers to a person identified as a relative of the person to be served;

b.   Declaring that Defendants have committed the violations of law alleged in this action;

c.   Enjoining and directing all Defendants to cease engaging in debt collection practices that violate the FDCPA, New York G.B.L. § 349, and N.Y.C. Admin. Code § 20-409.2, including ceasing collection on the debts and judgments against Class Members;

d.   Awarding to Plaintiffs and the putative Class:

    i.   actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

    ii.   statutory damages pursuant to the FDCPA;

    iii.   treble damages pursuant to N.Y. G.B.L. § 349(h);

    iv.   punitive damages pursuant to N.Y.C. Admin Code § 20-409.2;

    v.   costs and attorneys' fees pursuant to the FDCPA, N.Y. G.B.L. § 349, and N.Y.C. Admin Code § 20-409.2; and

e.   Granting such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated: February 24, 2020
New York, New York

Respectfully submitted,

> Beth E. Goldman, Esq.
> New York Legal Assistance Group
> 7 Hanover Square
> New York, NY 10004
> (212) 613-5000
>
> By: _____
>
> Julia Russell, of counsel
> Danielle Tarantolo, of counsel
> Jane Greengold Stevens, of counsel
> Shanna Tallarico, of counsel
> Jessica Ranucci, of counsel
> (212) 613-5006
> jrussell@nylag.org
>
> *Counsel for Plaintiffs*