UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JACKIE BURKS; BRUNILDA PAGAN CRUZ;
VENUS CUADRADO; and RHONDA DRYE,
individually and on behalf of all persons similarly
situated,

                                Plaintiffs,

               -against-

GOTHAM PROCESS, INC.; MULLOOLY,
JEFFERY, ROONEY & FLYNN, LLP; BASSEM
ELASHRAFI; and CARL BOUTON,

                            Defendants.

---

**No. 20 Civ. 1001 (RPK) (SMG)**

**<u>Oral Argument Requested</u>**

## AMENDED MEMORANDUM OF LAW
## IN SUPPORT OF
## <u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

NEW YORK LEGAL ASSISTANCE GROUP
7 Hanover Square
New York, NY 10004
Telephone: (212) 613-5000

*Attorneys for Plaintiffs*

Date of Service: July 17, 2020

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND.............................................................................................3

ARGUMENT ...................................................................................................................8

   I.    The Proposed Class Meets the Requirements of Rule 23(a)...........................................9

      A.    The Proposed Class is Sufficiently Numerous..........................................................9

      B.    There are Common Questions of Law and Fact........................................................10

      C.    Named Plaintiffs' Claims Are Typical of the Claims of the Class ...........................12

      D.    Named Plaintiffs are Adequate Representatives ......................................................13

   II.   The Proposed Class Meets the Requirements of Rule 23(b) .........................................14

      A.    The Proposed Injunctive Class Meets the Requirements of Rule 23(b)(2) ...............14

      B.    The Proposed Damages Class Meets the Requirements of Rule 23(b)(3) .................15

         1.    Common Questions Predominate .......................................................................15

         2.    Class Action is a Superior Method of Adjudication .............................................17

         3.    The Proposed Class is Ascertainable .................................................................17

   III.  NYLAG Satisfies the Rule 23(g) Prerequisites for Class Counsel .................................18

   IV.  The Court Should Certify Two Subclasses, One for Each Process Server.......................19

CONCLUSION................................................................................................................21

# TABLE OF AUTHORITES

## CASES

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................................10

*Burkett v. Houslanger & Assocs. et al.*, No 19 Civ. 2285 (LDH)(JO) (E.D.N.Y.) .....................18

*Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ..........................................13

*Casale v. Kelly*, 257 F.R.D. 396 (S.D.N.Y. 2009)..........................................................19, 20-21

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018)..................................................................8

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...........................................................................9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)........................................9

*D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451 (E.D.N.Y. 1996) .................................. 15-16

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)....................................... 13-14

*Flores v. Technical Career Institutes, Inc.*, Adv. Proceeding No. 18-01554 (MKV) (Bankr. S.D.N.Y.)..................................................................................................................................19

*Griffin v. PaineWebber, Inc.*, No. 99 CIV. 2292 (VM), 2001 WL 740764 (S.D.N.Y. June 29, 2001)................................................................................................................................ 19-20

*In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023(DC), 2002 WL 461513 (S.D.N.Y. Mar. 26, 2002)................................................................................................................................... 8-9

*In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ....................................................................17

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013).....................................15

*Koss v. Wackenhut Corp.*, No. 03 CIV. 7679 (SCR), 2009 WL 928087 (S.D.N.Y. Mar. 30, 2009)..........................................................................................................................................19

*Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88 (2d Cir. 2018)................ 17-18

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). ..........................................................10, 19

*Mayfield v. Asta Funding*, No. 14-CV-2591 (LAP)(JLC) (S.D.N.Y.)..........................................18

*Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14 Civ. 7539 (MKB)(CLP), 2019 WL 5204809 (E.D.N.Y. Oct. 15, 2019) ........................................................................................10

*Penn. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111 (2d Cir.) ............10

*Philemon v. Aries Capital Partners, Inc.*, No. 18 Civ. 1927 (CLP) (E.D.N.Y) ...............12, 18-19

*Quero v. DeVos*, No. 18 Civ. 9509 (GBD) (S.D.N.Y) ................................................................19

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ......................................................................13

*Salazar v. DeVos*, No. 14 Civ. 1230 (RWS) (S.D.N.Y.), ..........................................................19

*Sykes v. Mel Harris & Assocs., LLC* ("*Sykes I*"), 285 F.R.D. 279 (S.D.N.Y. 2012) ............*passim*

*Sykes v. Mel S. Harris & Assocs. LLC* ("*Sykes II*"), 780 F.3d 70 (2d Cir. 2015) .................*passim*

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). ................................................. 10, 11, 14

*Woe by Woe v. Cuomo,* 729 F.2d 96 (2d Cir. 1984) ....................................................................9

## FEDERAL RULES, STATUES, AND REGULATIONS

Federal Rule of Civil Procedure 23.....................................................................................*passim*

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the FDCPA) .......................*passim*

## STATE RULES, STATUES, AND REGULATIONS

New York General Business Law § 349 ..............................................................................*passim*

New York City Administrative Code § 20-409.2 ................................................................*passim*

## SECONDARY SOURCES

7AA Charles Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2019)......8, 14

William B Rubenstein, Alba Conte & Herbert B Newberg, *Newberg on Class Actions* (5th ed. 2019) ............................................................................................................................21

iv

Plaintiffs file this Amended Memorandum of Law in Support of Plaintiffs' Motion for

Class Certification, which was filed with this Court on April 1, 2020 (Notice of Motion, ECF

#10), to refer to the additional causes of action alleged by Plaintiffs on behalf of the proposed

certified class in the Amended Complaint filed on July 17, 2020. (Am. Compl., ECF #27).

## PRELIMINARY STATEMENT

Named Plaintiffs Jackie Burks, Brunilda Pagan Cruz, Venus Cuadrado, and Rhonda Drye

bring this action on behalf of themselves and over a thousand putative class members to

challenge Defendants' coordinated unlawful scheme to extract money from New York City

consumers by systematically falsifying affidavits of service and filing those affidavits of service

in debt collection lawsuits in New York City Civil Court. This sewer service scheme is executed

by Defendants: Gotham Process, Inc. ("Gotham"), a process serving agency; Bassem Elashrafi

and Carl Bouton, two individual process servers who serve process for Gotham; and Mullooly,

Jeffrey, Rooney & Flynn, LLP ("Mullooly"), a law firm that hires them to serve process.

None of the Named Plaintiffs were ever served with the summons and complaints in the

actions filed against them by Mullooly. But in the affidavits of service filed in those lawsuits,

Elashrafi or Bouton claimed to have effectuated service by handing the summons and complaint

to an individual who identified himself or herself as a "relative" of the person to be served:

"Christina Burks," "Daniel Cruz," "Anthony Cuadrado," and "Richard Drye," respectively.

These "relatives" do not exist. None of the Named Plaintiffs know anyone with the name of the

nonexistent "relative" Elashrafi or Bouton claims to have served with the papers.

Named Plaintiffs are not alone. Plaintiffs' counsel, the New York Legal Assistance

Group ("NYLAG"), has retrieved and reviewed a sample of approximately three hundred

affidavits of service signed by Elashrafi or Bouton, on behalf of Gotham, in cases filed by

Mullooly. Elashrafi or Bouton claim to have effectuated service in an implausible 94% of these

cases by handing the papers to a relative of the person to be served. Each of these affidavits of service follows a standard form, and is virtually identical except for the case details and the name and description of the "relative" purportedly served.

Filing false affidavits of service allows Defendants to illegally obtain default judgments—as they did against Ms. Burks and many members of the class. Default judgments can have a devastating impact on low-income New Yorkers, who comprise the majority of the putative class, because they allow a judgment creditor to garnish an individual's wages or levy his or her bank account, with no judicial approval required, *for the next twenty years*.

Plaintiffs bring this action on behalf of themselves and over one thousand putative class members under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the FDCPA); New York General Business Law § 349, which prohibits deceptive business acts and practices; and New York City Administrative Code § 20-409.2, which provides a cause of action for any person injured by a process server's violation of state process serving laws and regulations. Plaintiffs also bring common law claims for negligence per se; negligent hiring, training, retention, and supervision; and negligence against Defendants Gotham and Mullooly. Plaintiffs now seek certification, under Rule 23(b)(2) and 23(b)(3), of a class comprised of:

> All natural persons who have been or will be sued by Mullooly in New York City Civil Court cases in which an affidavit of service has been or will be filed, stating that Elashrafi or Bouton, on behalf of Gotham, effectuated service by delivering the papers to a person identified as a relative of the person to be served ("Class Members").

This case is appropriate for class-wide resolution, and class certification is appropriate at this early stage in the litigation, because the claims asserted by Plaintiff and the Class Members arise from Defendants' uniform practice of filing nearly-identical standard form affidavits of service

against the Class Members, each claiming to effectuate service by handing the papers to a relative of the Class Member.

Plaintiffs make this motion on the April 1, 2020 Declaration of Jessica Ranucci in Support of Plaintiffs' Motion for Class Certification ("Ranucci Decl.") (ECF #12) and its exhibits, which include Affidavits from the Named Plaintiffs and a sample of affidavits of service, default judgment applications, and opposition papers filed by Defendants against Named Plaintiffs and Class Members.[1]

## FACTUAL BACKGROUND

Mullooly, a debt collection law firm, hires Gotham as the process serving agency for thousands of New York City Civil Court debt collection lawsuits per year. *See* Ranucci Decl. ¶ 12. Gotham, in turn, retains Elashrafi and Bouton as process servers for hundreds of these lawsuits. *See id*. In each suit, Elashrafi or Bouton, on behalf of Gotham, signs an affidavit of service under penalty of perjury. *Id*. Exs. F, G. Gotham notarizes these affidavits of service and, at the direction of Mullooly, files them in court. *Id*. ¶ 22, Exs. F, G.

In November 2017, Mullooly, on behalf of its debt buyer client, Unifund CCR, LLC ("Unifund"), sued Plaintiff Jackie Burks to collect on an allegedly unpaid debt. *See* Burks Aff. ¶ 5. In the affidavit of service filed in that lawsuit, Elashrafi, on behalf of Gotham, swore that he effectuated service on Ms. Burks by handing the summons and complaint to "Christina Burks,"

---

[1] Ranucci Decl. Ex. A, Affidavit of Jackie Burks ("Burks Aff.") (ECF #12-1); Ranucci Decl. Ex. B, Affidavit of Brunilda Pagan Cruz ("Cruz Aff.") (ECF #12-2); Ranucci Decl. Ex. C, Affidavit of Translation of Cruz Aff. (ECF #12-3); Ranucci Decl. Ex. D, Affidavit of Venus Pujols ("Cuadrado Aff.") (Ms. Cuadrado recently married and changed her last name from Cuadrado to Pujols. *Id*. ¶ 2. For clarity, we continue to refer to her as "Ms. Cuadrado.") (ECF #12-4); Ranucci Decl. Ex. E, Affidavit of Rhonda Drye ("Drye Aff.") (ECF #12-5); Ranucci Decl. Ex. F, Affidavits of Service filed against Named Plaintiffs (ECF #12-6); Ranucci Decl. Ex. G, Sample Affidavits of Service Filed Against Class Members (ECF #12-7); Ranucci Decl. Ex. H, Sample Default Judgment Applications Filed Against Named Plaintiff and Class Members (ECF #12-8); Ranucci Decl. Ex. I, Oppositions Filed Against Named Plaintiff and Class Members (ECF #12-9).

The April 1, 2020 Ranucci Declaration and its exhibits are refiled as attachments to this Amended Memorandum of Law for the Court's convenience.

who "identified herself as [a] relative of [Ms. Burks]." Ranucci Decl. Ex F. The "Christina Burks" named in the affidavit of service does not exist: Ms. Burks has no relatives by that name and does not know anyone by that name. Burks Aff. ¶ 17. Ms. Burks was never served. *See id.* ¶¶ 5-6.

In January 2019, Mullooly, on behalf of Unifund, sued Plaintiff Brunilda Pagan Cruz to collect on an allegedly unpaid debt. *See* Cruz Aff. ¶ 6. In the affidavit of service filed in that lawsuit, Elashrafi, on behalf of Gotham, swore that he effectuated service on Ms. Cruz by handing the summons and complaint to "Daniel Cruz," who "identified himself as [a] relative of [Ms. Cruz]." Ranucci Decl. Ex F. The "Daniel Cruz" named in the affidavit of service does not exist: Ms. Cruz has no relatives by that name and does not know anyone by that name. Burks Aff. ¶¶ 10-11. Ms. Cruz was never served. *Id.* ¶ 12.

In August 2019, Mullooly, on behalf of Unifund, sued Plaintiff Venus Cuadrado to collect on an allegedly unpaid debt. *See* Cuadrado Aff. ¶ 7. In the affidavit of service filed in that lawsuit, Bouton, on behalf of Gotham, swore that he effectuated service on Ms. Cuadrado by handing the summons and complaint to "Anthony Cuadrado," who "identified himself as [a] relative of [Ms. Cuadrado]." Ranucci Decl. Ex F. The "Anthony Cuadrado" named in the affidavit of service does not exist: Ms. Cuadrado has no relatives by that name and does not know anyone by that name. Cuadrado Aff. ¶¶ 16, 23. Ms. Cuadrado was never served. *Id.* ¶ 9.

In April 2017, Mullooly, on behalf of Unifund, sued Plaintiff Rhonda Drye to collect on an allegedly unpaid debt. *See* Drye Aff. ¶¶ 6. In the affidavit of service filed in that lawsuit, Bouton, on behalf of Gotham, swore that he effectuated service on Ms. Burks by handing the summons and complaint to "Richard Drye," who "identified himself as [a] relative of [Ms. Drye]." Ranucci Decl. Ex F. The "Richard Drye" named in the affidavit of service does not exist:

Ms. Drye has no relatives by that name and does not know anyone by that name. Drye Aff. ¶ 19.

Ms. Drye was never served. *Id.* ¶¶ 12, 14.

Nearly identical standard form affidavits of service signed by Elashrafi or Bouton on

behalf of Gotham were filed in the lawsuits filed by Mullooly against each Class Member, just as

they were in the cases against Named Plaintiffs, with the only differences being the identifying

case information and the name and description of the purported relative. Ranucci Decl. ¶ 16, Exs.

F, G. NYLAG reviewed 299 cases filed by Mullooly in New York City Civil Court in seven

months of 2018 that contain affidavits of service signed by Elashrafi or Bouton, on behalf of

Gotham. *Id.* ¶ 14. In 282 of those 299 cases (over 94%), Elashrafi or Bouton claimed to have

effectuated service by handing the summons and complaint to a person who identified himself or

herself as a relative of the person served (the "Sampled Class Members"). *Id.* ¶ 15. Each of these

282 consumers is a Class Member, because each affidavit of service shows: (1) Mullooly sued

the individual in New York City Civil Court and (2) Elashrafi or Bouton, on behalf of Gotham,

swore that he effectuated service by delivering the papers to a person identified as a relative of

the person to be served. The affidavits of service filed in the cases against the Named Plaintiffs,

and twenty randomly-selected affidavits of service filed against Sampled Class Members, are

attached to the Declaration of Jessica Ranucci as Exhibits F and G, respectively. Plaintiffs can

provide the Court with the full set of Affidavits of Service filed against Sampled Class Members

at the Court's request. *Id.* ¶ 19.

Because they were never served, Named Plaintiffs became aware of the lawsuits filed

against them not through lawful service of process, but in some other way. Ms. Burks only

learned that a lawsuit had been filed against her when Mullooly attempted to garnish her wages

pursuant to a judgment it had obtained against her. Burks Aff. ¶¶ 5-6. Ms. Cruz first learned that

a lawsuit had been filed against her when her neighbor told her that the neighbor had received

papers for Ms. Cruz by mail. Cruz Aff. ¶ 7. Ms. Cuadrado first learned that a lawsuit had been

filed against her when her mother told her that her mother had received papers for Ms. Cuadrado

by mail. Cuadrado Aff. ¶¶ 5, 8. Ms. Drye first learned that a lawsuit had been filed against her

when her neighbor told her that he picked up papers for Ms. Drye off the floor of their

apartment's entranceway. Drye Aff. ¶¶ 9-10. It is likely that many Class Members remain

unaware of the lawsuits filed against them; consumers filed an answer or appeared in court to

defend themselves in only approximately 17% of the cases against Sampled Class Members.

Ranucci Decl. ¶ 27.

No attorney at Mullooly meaningfully reviews the affidavits of service; if attorneys at

Mullooly meaningfully reviewed the affidavits of service, they would see that they are facially

implausible because, as described above, virtually all the affidavits of service purport to make

substitute service on a relative. *See id.* ¶ 15. Nonetheless, Mullooly seeks, and obtains, default

judgments against many Class Members who do not appear in court. In the lawsuit filed against

Ms. Burks, Mullooly obtained a default judgment on the basis of an application it submitted that

included Elashrafi's affidavit of service, as well as a sworn statement by a Mullooly attorney that

Ms. Burks "failed to appear, answer or move, and the time to do so has expired." Ranucci Decl.

Ex. H. The default judgment applications filed against Class Members are nearly identical to

each other and to the application filed against Ms. Burks. *See id.* Each application likewise

contains Elashrafi or Bouton's affidavit of service, and in each one, a Mullooly attorney swore

that the Class Member "failed to appear, answer or move, and the time to do so has expired." *Id.*

The default judgment application filed against Ms. Burks, and seven other default judgment

applications filed against Sampled Class Members, are attached to the Declaration of Jessica Ranucci as Exhibit H.

Moreover, when Class Members challenge the falsified affidavits, Mullooly files and prepares boilerplate opposition papers, signed by a Mullooly attorney under penalty of perjury. When Ms. Burks filed a Motion to Vacate the judgment against her, Mullooly attached Elashrafi's affidavit of service and stated that Ms. Burks's "assertion that she was not served is refuted by [this] affidavit of service"; other oppositions contain this same statement. Ranucci Decl. Ex. I. None of the Oppositions filed by Mullooly have specific facts refuting the consumer's argument regarding service. *Id.* The boilerplate oppositions filed against Ms. Burks and other Class Members are attached to the Declaration of Jessica Ranucci as Exhibit I. Mullooly's filing of these boilerplate oppositions without any specific facts prolongs legal proceedings, as the inevitable and foreseeable effect of filing these oppositions is that consumers must appear at one or more additional court dates for the motions. Ranucci Decl. ¶ 30.

Defendants' scheme harms Named Plaintiffs and Class Members. Named Plaintiffs and Class Members expend time and money attending court dates, incur out-of-pocket expenses, such as for transportation, photocopying, and postage, and experience emotional harm. *See* Burks Aff. ¶¶ 26-30; Cruz Aff. ¶¶ 22-27 Cuadrado Aff. ¶¶ 26-31; Drye Aff. ¶¶ 21-24. Class Members also are also harmed by collections pursuant to the lawsuits filed against them, including under settlement agreements and default judgments, which can lead to enforcement actions including bank freeze and levy and wage garnishment. *See* Ranucci Decl. ¶ 7.

Plaintiffs filed this action on February 24, 2020, and filed an Amended Complaint (ECF #27) on July 17, 2020.

## ARGUMENT

Plaintiffs seek certification of an injunctive class under Fed. R. Civ. P. 23(b)(2) and a

damages class under Fed. R. Civ. P. 23(b)(3) comprising:

> All natural persons who have been or will be sued by Mullooly in New York City
> Civil Court cases in which an affidavit of service has been or will be filed, stating
> that Elashrafi or Bouton, on behalf of Gotham, effectuated service by delivering the
> papers to a person identified as a relative of the person to be served.

The crux of Plaintiffs' and the Class's claims is that Defendants violate the FDCPA, N.Y. Gen.

Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2 by preparing, filing, and relying on false

affidavits of service. In the alternative, Defendants Gotham and Mullooly breached the duties of

reasonable care required by these statutes and New York common law. The affidavits of service

filed against each Class Member use a standard form and are virtually identical, except for the

case details and the name and description of the purported relatives. *See* Ranucci Decl. Exs. F, G.

In each one, Elashrafi or Bouton claims to have effectuated service by handing the papers to a

person who identified himself or herself as a relative of the class member. *Id.* Because this case

is about standardized litigation documents, prepared by the same individuals in the same manner

and filed against more than a thousand individuals, class treatment is appropriate.

Even at this early stage in the litigation, Plaintiffs can demonstrate that the proposed class

meets the requirements of Rule 23(a) and 23(b). Rule 23 "instruct[s] that class certification

should be resolved early on." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 (2018). *See*

Fed. R. Civ. P. 23(c)(1)(A) (certification should be "at an early practicable time"); 7AA Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1785.3 (3d ed. 2019)

("certification decision should be made promptly," including "at an early stage"). "[L]iberal

consideration of the requirements for class certification is permitted in the early stages of

litigation." *In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023(DC), 2002 WL 461513, at *3

(S.D.N.Y. Mar. 26, 2002) (citing *Woe by Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir. 1984)).

Plaintiffs' motion is supported by ample "evidentiary proof," *Comcast Corp. v. Behrend*, 569

U.S. 27, 27 (2013), including affidavits of the Named Plaintiffs, an attorney declaration

reflecting Plaintiffs' extensive analysis of Defendants' practices, and dozens of standard form

documents filed by Defendants in the debt collection lawsuits.

### I.       The Proposed Class Meets the Requirements of Rule 23(a)

Under Federal Rule of Civil Procedure 23(a), "a class may be certified only if four

prerequisites have been met: numerosity, commonality, typicality, and adequacy of

representation." *Sykes v. Mel S. Harris & Assocs. LLC* ("*Sykes II*"), 780 F.3d 70, 80 (2d Cir.

2015). The proposed class meets all of these requirements.

#### A.  The Proposed Class is Sufficiently Numerous

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that

joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally

presumed for classes larger than forty members. *Consol. Rail Corp. v. Town of Hyde Park*, 47

F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily meet this requirement, as Defendants file lawsuits,

and accompanying affidavits of service, against more than forty class members *per month*.

Ranucci Decl. ¶ 23. Moreover, NYLAG has identified 282 members of the proposed class from

its review of public court records—and these comprise just a subset of all class members, as they

are only class members against whom Mullooly filed cases during seven months of 2018. *Id.*

¶ 15.[2] Plaintiffs estimate that the class contains over one thousand members. *Id.* ¶ 23.

---

[2] As explained in greater detail, *see infra* at 21 n.6, the subset of cases in which Elashrafi purports to serve process is itself sufficient to meet the numerosity requirement, as is the subset of cases in which Bouton purports to serve process. *See also* Ranucci Decl. ¶ 24.

Further, the "the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case," including "the financial resources of class members [and] their ability to sue separately." *Penn. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (subsequent history omitted). The class here is not made up of "sophisticated . . . investors . . . [with] millions of dollars at stake," *id.*, but rather of low-income individuals who, absent this class action, would likely "be without effective strength to bring their opponents into court at all," *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted); *see also* Ranucci Decl. ¶ 5.

### B.  There are Common Questions of Law and Fact

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met if the class members' claims depend on a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[T]here need only be a single issue common to all members of the class, as the critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." *Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, No. 14 Civ. 7539 (MKB)(CLP), 2019 WL 5204809, at *4 (E.D.N.Y. Oct. 15, 2019). Commonality is often found where each class member's injuries "derive from a unitary course of conduct." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

The class's claims stem from Defendants' unitary course of conduct. Specifically, Defendants prepare, sign under penalty of perjury, notarize, and file nearly identical affidavits of service claiming to serve each class member by handing the papers to a person who identified

himself or herself as that class member's relative. Ranucci Decl. Exs. F, G, ¶ 15. Common

questions of fact are "[i]nherent in this alleged course of conduct" because Defendants act in a

similar manner toward all putative class members. *Sykes v. Mel Harris & Assocs., LLC* ("*Sykes I*"), 285 F.R.D. 279, 290 (S.D.N.Y. 2012). Moreover, there are numerous questions of law

common to the class, including, among others:

- whether preparing and signing a false affidavit of service violates the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2;

- whether filing a false affidavit of service violates the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2;

- whether filing affidavits of service without meaningful attorney review violates the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2;

- whether filing court documents, such as default judgment applications and opposition papers, that contain false statements, violates the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2; and

- whether Gotham and Mullooly fail to satisfy the duties of reasonable care established by these statutes and codes, and by New York common law.

Each of these questions raises common issues that can be resolved "in one stroke," which would

"drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

    *Sykes v. Mel S. Harris & Associates LLC et al.*, a Second Circuit decision affirming

certification of a class of New York City consumers asserting FDCPA and N.Y. Gen. Bus. Law

§ 349 claims against a debt collection law firm, a process serving agency, and individual process

servers, compels certification here. *See Sykes I*, 285 F.R.D. 279, *aff'd*, *Sykes II*, 780 F.3d 70.

Like the Named Plaintiffs here, the *Sykes* plaintiffs alleged that the attorney defendants filed

standard affidavits of service and other litigation documents that "follow[ed] a uniform format,"

*Sykes II*, 780 F.3d at 77, that those documents allegedly contained false statements that class

members were lawfully served with process, *id*. at 76-78, and that Defendants' filing of such

documents was "necessary to effectuating defendants' alleged scheme" to extract money through unlawful New York City Civil Court lawsuits," *id.* at 85.

The *Sykes* District Court found commonality because "plaintiffs' injuries derive from defendants' alleged unitary course of conduct," and because the litigation documents used by the defendants were "form" documents filed as "part of a standard practice with respect to each putative class member." *Sykes I*, 285 F.R.D. at 290-91.[3] Further, the Court found that "whether each member was, in fact, properly served" did not "preclude a finding of commonality." *Id.* at 291. The Second Circuit affirmed, finding that the district court properly "determin[ed] that defendants' scheme, which had multiple components, was a 'unitary course of conduct' that depended . . . for its success" on filing standard, uniform false affidavits. *Sykes II*, 780 F.3d at 85; *see also, e.g.*, Mem. & Order, *Philemon v. Aries Capital Partners, Inc.*, No. 18 Civ. 1927 (CLP) (E.D.N.Y Jul. 1, 2019), ECF No. 52 at 14 (finding commonality because "plaintiff's claims all stem from the same unlawful debt collection scheme orchestrated by defendants," including that "[d]efendants acted in a similar manner toward all class members by filing nearly identical documents, containing similar misrepresentations, in connection with collection actions filed in New York City Civil Court"). The same conclusions are true for defendants' conduct in this case.

### C.  Named Plaintiffs' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that class representatives' claims be typical of the claims of the class. The typicality requirement is met where, as here, "the disputed issue[s] of law or fact

---

[3] *See also Sykes I*, 285 F.R.D. at 290 n.10 ("[C]ourts throughout [the Second] Circuit have routinely found that putative classes alleging debt collection schemes that employ false or misleading language in mailings sent to debtors satisfy the commonality requirement of Rule 23(a)(2) and warrant class certification under Rule 23(b)." (collecting cases)).

occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) (quotation omitted), *overruled on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24. "[M]inor variations in the fact patterns underlying individual claims" do not prevent a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

The Named Plaintiffs' claims are typical of the claims asserted by the putative class, in that Named Plaintiffs assert that Defendants' uniform practices, described above, violated their own rights under the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2, and/or violated New York common law. *See* Burks Aff.; Cruz Aff.; Cuadrado Aff.; Drye Aff. The putative class members assert precisely the same claims based on the same practices. *See* Ranucci Decl. Exs. F-I; Am. Compl. ¶¶ 299, 303, 310, 320, 323-25, 328-29.

### D.  Named Plaintiffs are Adequate Representatives

The final requirement of Rule 23(a) is that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). "[A]dequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes II*, 780 F.3d at 90 (internal quotation marks omitted). Named Plaintiffs have no interests antagonistic to the interest of other putative class members. *See* Burks Aff. ¶ 2; Cruz Aff. ¶ 2; Cuadrado Aff. ¶ 3; Drye Aff. ¶ 2. To the contrary, Named Plaintiffs have been subject to the same unlawful conduct as the other putative class members. Because "the same strategies that will vindicate

plaintiffs' claims will vindicate those of the class," they are adequate class representatives. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).[4]

## II.     The Proposed Class Meets the Requirements of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), at least one of the three subdivisions of Rule 23(b) must be satisfied in order to qualify for class certification. Here, Plaintiffs seek class certification under both Rules 23(b)(2), for injunctive relief, and 23(b)(3), for damages.

### A.  The Proposed Injunctive Class Meets the Requirements of Rule 23(b)(2)

Rule 23(b)(2) supplies a basis for certification where, as here, the Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate [for] the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is appropriate if the declaratory or injunctive relief sought would "benefit[] all [the class members] members at once." *Dukes*, 564 U.S. at 362.

Named Plaintiffs and Class Members seek a declaration that Defendants have violated the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2, and/or New York common law, and seek to enjoin Defendants from engaging in the unlawful practices set forth in the Amended Complaint, including ceasing collection on the debts and judgments against Class Members. *See* Am. Compl. at 50-51. This class-wide injunctive relief is appropriate, because Defendants have acted (and are acting) on grounds that apply generally to the class by filing nearly-identical affidavits of service in the lawsuits against each Class Member. *See* Ranucci

---

[4] Ms. Drye, who successfully challenged the unlawful service in 2017, is outside of the FDCPA's one-year statute of limitations. However, she is still an appropriate class representative because she brings timely state law claims, and the other proposed class representatives bring timely FDCPA claims. *See* Charles Alan Wright & Arthur R. Miller, 7A Federal Practice & Procedure § 1765 (3d ed. 2019) ("[I]f there is more than one named representative. . . [and] one of the representatives is adequate, the requirement will be met.").

Decl. Exs. F, G. The requested injunction would provide relief for every member of the class, as every member of the class faces the risk of illegal collection actions by Defendants, through default judgments, settlement agreement enforcement, or continued or renewed litigation. Ranucci Decl. ¶ 7; *see also Sykes II*, 780 F.3d at 97 (explaining that even though the state court lawsuits filed against each class member were in different procedural postures (and some judgments had even been vacated), declaratory and injunctive relief "would provide relief to each member of the class"). Moreover, absent class-wide injunctive relief, Defendants will continue these practices unabated, causing harm to more and more low-income consumers each month.

### B.  The Proposed Damages Class Meets the Requirements of Rule 23(b)(3)

Plaintiffs also seek certification of a class under Rule 23(b)(3) because they are entitled to monetary damages under the FDCPA, N.Y. Gen. Bus. Law § 349, N.Y.C. Admin. Code § 20-409.2, and New York common law.

#### 1.  Common Questions Predominate

Certification under Rule 23(b)(3) is appropriate here because questions of law or fact common to the class predominate over individual questions. "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quotation omitted). The rule does not require that individual questions be absent; to the contrary, "[t]he text of Rule 23(b)(3) itself contemplates that such individual questions will be present." *Sykes II*, 780 F.3d at 81.

"[C]ases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for

resolution by class action." *Sykes I*, 285 F.R.D. at 293 (quoting *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)). The class's central claim is based on the alleged illegality of the standardized affidavits of service and standardized practices involved in the preparation and filing of these affidavits of service. The class's additional claims are based on the alleged illegality of *other* standardized documents (the default judgment applications and oppositions).

Again, *Sykes* supports certification on the similar facts presented here. The District Court in *Sykes* found that, notwithstanding that "individual issues may exist as to causation and damages," the predominance requirement was met because:

> Every potential class member's claim arises out of defendants' uniform, widespread practice of filing automatically-generated, form affidavits . . . to obtain default judgments against debtors in state court. Whether this practice violates the FDCPA . . . [or] New York GBL § 349 . . . does not depend on individualized considerations.

*Sykes I*, 285 F.R.D. at 293.

Individualized issues as to whether each Class Member was in fact served do not defeat certification; here, as in *Sykes*, "the false affidavits of service [a]re susceptible to class-wide proof." *Sykes II*, 780 F.3d at 86; *see id.* at 91 (rejecting argument that "individual issues related to service" would raise "any individualized causation issues with respect to plaintiffs' claims under the FDCPA"). Plaintiffs intend to submit class-wide proof in support of their claims. First, Plaintiffs intend to show that, with respect to the entire class, Defendants' "affidavits of service [should] not be entitled to credibility," *Sykes II*, 780 F.3d at 86, by proving that many of these affidavits claim to have effectuated service on nonexistent relatives of Class Members. Second, Plaintiffs intend to prove that all affidavits of service that Mullooly files in consumer debt cases against Class Members are prepared in the same manner, and that Defendants give all affidavits

16

the same level of review. Third, Plaintiffs intend to prove that effectuating service within the time periods claimed by Defendants would be impossible. *See* Am. Compl. ¶¶ 85-92. In sum, "[p]roof of fraudulent service" can "be achieved on a class-wide level," *Sykes II*, 780 F.3d at 86, so common issues predominate.

### 2.  Class Action is a Superior Method of Adjudication

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FDCPA lawsuits concerning the use of standard documents regularly satisfy the superiority requirement. *See Sykes I*, 285 F.R.D. at 294. Adjudicating claims stemming from similar documents in a single action avoids an unwieldy number of repetitive individual lawsuits and the potential for inconsistent results. Moreover, certifying a Rule 23(b)(3) class action here would help to vindicate the rights of low-income New York consumers who lack the means to pursue individual claims, "result[ing] in efficiencies of cost, time, and judicial resources and permit[ting] a collective recovery where obtaining individual judgments might not be economically feasible." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018).

### 3.  The Proposed Class is Ascertainable

Rule 23(b)(3) "contains an implicit threshold requirement that the members of a proposed class be readily identifiable, often characterized as an 'ascertainability' requirement." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (internal quotation omitted). Plaintiffs' proposed class is ascertainable, in that it is defined "using objective criteria that establish a membership with definite boundaries." *Id.* Plaintiffs' class definition is based on two criteria: (1) Mullooly sued or will have sued the individual in New York City Civil Court and (2) an affidavit of service was filed or will have been filed in that lawsuit stating that Elashrafi or Bouton, on behalf of Gotham, effectuated service by delivering the papers to a person identified

17

as that individual's relative. Each of these "clearly objective" criteria, *id.* at 269, is (or will be) contained in Defendants' business and litigation records and/or in public court records.

### III.        NYLAG Satisfies the Rule 23(g) Prerequisites for Class Counsel

Rule 23(g)(1)(A) sets forth the factors a court must consider in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1).

NYLAG is a nonprofit organization that provides high quality, free civil legal services to low-income New Yorkers in consumer protection and other fields. Ranucci Decl. ¶ 1. NYLAG's Special Litigation Unit, which specializes in class actions to benefit low-income New Yorkers, has been described as "one of the highest caliber impact litigation practices in New York City." Declaration of Matthew Brinckerhoff ¶ 15, *Burkett v. Houslanger & Assocs. et al.*, No 19 Civ. 2285 (LDH)(JO) (E.D.N.Y. Nov. 7, 2019), ECF No. 43-3. NYLAG is particularly knowledgeable with respect to the claims asserted in this litigation, and has been appointed class counsel in connection with class actions affecting over one hundred thousand low-income consumers in the past three years alone. Ranucci Decl. ¶ 32. For example, the Honorable Loretta Preska appointed NYLAG class counsel as part of a settlement providing redress to 60,000 New Yorkers illegally sued by debt collectors in New York City Civil Court. *Mayfield v. Asta Funding*, No. 14 Civ. 2591 (LAP)(JLC) (S.D.N.Y. Apr. 10, 2018), ECF No. 130. In December 2019, the Honorable Cheryl Pollak appointed NYLAG class counsel as part of a settlement in a similar action, noting that NYLAG was "well-qualified" and that NYLAG's work enforces "the rights of low-income New Yorkers who would likely otherwise be without the ability to secure

legal representation" so that they "are vindicated in the courts and individuals are provided meaningful redress." *Philemon v. Aries Capital Partners, Inc.*, No. 18 Civ. 1927 (CLP) (E.D.N.Y. Dec. 10, 2019), ECF No. 58 at 17.[5]

NYLAG has spent significant time and resources investigating the claims of Named Plaintiffs and the putative class members, including by interviewing Named Plaintiffs and other class members; retrieving and reviewing court documents and other court records and data, including the sample of approximately three hundred affidavits of service described above; making and reviewing the results of a request under New York's Freedom of Information Law; conducting legal research; and drafting the complaint. Ranucci Decl. ¶ 33. NYLAG's extensive work and extensive experience support appointment here.

### IV.    The Court Should Certify Two Subclasses, One for Each Process Server

Certification of subclasses is appropriate when different members of the class have "separate and discrete legal claims." *Marisol A.*, 126 F.3d at 378. A court may create subclasses "solely to expedite resolution of the case" by segregating issues that are "common to some members of the existing class." *Casale v. Kelly*, 257 F.R.D. 396, 408 (S.D.N.Y. 2009). Subclasses are often created to "present different causes of action against different defendants." *Koss v. Wackenhut Corp.*, No. 03 CIV. 7679 (SCR), 2009 WL 928087, at \*5 (S.D.N.Y. Mar. 30, 2009); *see also Griffin v. PaineWebber, Inc.*, No. 99 CIV. 2292 (VM), 2001 WL 740764, at \*2

---

[5] *See also, e.g.*, *Quero v. DeVos*, No. 18 Civ. 9509 (GBD) (S.D.N.Y Dec. 17, 2019), ECF No. 45 (appointing NYLAG Class Counsel for settlement class of low-income student loan borrowers); *Flores v. Technical Career Institutes, Inc.*, Adv. Proceeding No. 18-01554 (MKV) (Bankr. S.D.N.Y. Aug. 24, 2018), ECF No. 25 (appointing NYLAG Class Counsel for class of low-income New York City consumers in fraud action against for-profit college); *Salazar v. DeVos*, No. 14 Civ. 1230 (RWS) (S.D.N.Y. Aug. 9, 2018), ECF No. 72 (appointing NYLAG Class Counsel for settlement class comprising over 60,000 low-income student loan borrowers).

(S.D.N.Y. June 29, 2001) ("[A] class, when certified, may be divided into subclasses to support claims against different defendants.").

Plaintiffs seek certification of two subclasses, one for each process server, each of which brings claims under the FDCPA, N.Y. Gen. Bus. Law § 349, and N.Y.C. Admin. Code § 20-409.2 against the relevant process server. The reason Plaintiffs seek certification of these subclasses is straightforward: consumers like Ms. Burks and Ms. Cruz, who were purportedly served by Elashrafi, bring claims against Elashrafi, Gotham, and Mullooly (but not Bouton), and consumers like Ms. Cuadrado and Ms. Drye, who were purportedly served by Bouton, bring claims against Bouton, Gotham, and Mullooly (but not Elashrafi). In other words, the class as a whole brings claims against Gotham and Mullooly, and each subclass brings claims against one of the two individual process servers.

Specifically, Plaintiffs seek certification of a "Elashrafi Subclass," represented by Ms. Burks and Ms. Cruz, comprising:

> All natural persons who have been or will be sued by Mullooly in New York City Civil Court in which an affidavit of service has been or will be filed, stating that **Elashrafi**, on behalf of Gotham, effectuated service by delivering the papers to a person identified as a relative of the person to be served ("Elashrafi Subclass Members");

and a "Bouton Subclass," represented by Ms. Cuadrado and Ms. Drye, comprising:

> All natural persons who have been or will be sued by Mullooly in New York City Civil Court in which an affidavit of service has been or will be filed, stating that **Bouton**, on behalf of Gotham, effectuated service by delivering the papers to a person identified as a relative of the person to be served ("Bouton Subclass Members").

When a subclass is certified for case management purposes, and there is no conflict among class members, "it is unnecessary to evaluate it under Rule 23(a) for commonality,

numerosity, typicality, and adequacy of representation." *Casale*, 257 F.R.D. at 408.[6] In any event, certification of these subclasses is appropriate for the same reasons that certification of the class as a whole is appropriate. Each member of each subclass experienced the same conduct as every other member of the subclass; specifically: each subclass member had a lawsuit filed against him or her by Mullooly in which an affidavit of service was filed stating that Elashrafi or Bouton effectuated service by handing the papers to a person who identified himself or herself as a relative of the subclass member. Accordingly, Plaintiffs seek certification of the proposed Elashrafi Subclass and Bouton Subclass.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the proposed class and subclasses set forth above pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3); name Jackie Burks, Brunilda Pagan Cruz, Venus Cuadrado, and Rhonda Drye as the class representatives; and name the New York Legal Assistance Group class counsel pursuant to Federal Rule of Civil Procedure 23(g).

In the alternative, if the Court determines that Plaintiffs have not established all relevant criteria, Plaintiffs respectfully request that the Court hold this motion in abeyance and order expedited, tailored discovery on the limited issues relevant to class certification.

---

[6] *See also* 1 Newberg on Class Actions § 3:16 (5th ed. 2019) ("[I]f the subclass members are also members of the larger, already certified class, courts have held that the subclass may not be required to satisfy independently the numerosity requirement."). Regardless, each subclass is sufficiently numerous. NYLAG estimates that there are at least 180 Elashrafi Subclass Members, and NYLAG has already identified 245 Bouton Subclass Members. Ranucci Decl. ¶ 24.

Dated: New York, New York
      July 17, 2020

                              Respectfully submitted,

                              _____

                              Julia Russell
                              Jane Greengold Stevens
                              Shanna Tallarico
                              Jessica Ranucci
                              NEW YORK LEGAL ASSISTANCE GROUP
                              7 Hanover Square
                              New York, NY 10004
                              (212) 613-5000
                              jrussell@nylag.org

                              *Counsel for Plaintiffs*