UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JACKIE BURKS; BRUNILDA PAGAN CRUZ;
VENUS CUADRADO; and RHONDA DRYE,
individually and on behalf of all persons similarly
situated,

Plaintiffs,

-against-

GOTHAM PROCESS, INC.; Mullooly, JEFFERY,
ROONEY & FLYNN, LLP; BASSEM
ELASHRAFI; and CARL BOUTON,

Defendants.

No. 20 Civ. 1001 (RPK) (SMG)

**Oral Argument Requested**

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

NEW YORK LEGAL ASSISTANCE GROUP
7 Hanover Square
New York, NY 10004
Telephone: (212) 613-5000

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

STANDARD OF REVIEW ................................................................................. 5

ARGUMENT ..................................................................................................... 5

   I.   Plaintiffs Have Adequately Alleged a Violation of § 1692e of the FDCPA. ...................... 5

      A.   Sewer Service and Falsified Affidavits of Service Plainly Impede Consumers' Ability to Respond to Debt Collection Lawsuits. .............................................. 6

      B.   The FDCPA Does Not Shield Debt Collectors Who to Lie to Courts. ......................... 13

      C.   Defendants Have Not Challenged Plaintiffs' § 1692e Claims Based on "Meaningful Attorney Review" or False Statements in Other Court Filings. ......................... 17

   II.   Plaintiffs Have Adequately Alleged a Violation of § 1692f of the FDCPA. .................... 17

      A.   Defendants Misstate the Relationship Between §§ 1692e and 1692f ........................... 17

      B.   Defendants' Sewer Service Is Unfair and Unjust ........................................................ 18

   III.   The Court has Jurisdiction Over Plaintiffs' Well-Pleaded State Law Claims Against Defendants ................................................................................................................ 21

      A.   Plaintiffs Have Stated A Claim Under N.Y. G.B.L. § 349 For Defendants' Deceptive, Consumer-Oriented Conduct ................................................................ 22

      B.   Defendants Gotham and Mullooly Breached Their Common Law and Statutory Duties of Care to Plaintiffs By Engaging in Unlawful Service of Process ................... 25

      C.   Process Server Defendants Violate N.Y.C. Admin. Code § 20-409.2 by Falsifying Affidavits of Service ................................................................................. 26

   IV.   No Allegations of the Complaint Should be Stricken .................................................... 28

CONCLUSION ................................................................................................. 29

# TABLE OF AUTHORITES

**Cases**

*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166 (2d Cir. 2013) ........................ 25

*Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) ............................................................................................................................................. 23

*Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016)………………………………………………………………………………………23

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017)............... passim

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 15 CV 09388 (GBD), 2016 WL 3443600 (S.D.N.Y. June 8, 2016)........................................................................................... 13

*Baker v. G.C. Svcs. Corp.,* 677 F.2d 775 (9th Cir.1982) ................................................................ 8

*Carroll v. U.S. Equities Corp.*, No. 18 CV 667 (TJM)(CFH), 2019 WL 4643786 (N.D.N.Y. Sept. 24, 2019) ...................................................................................................................... 8, 19

*Ceban v. Capital Mgmt. Servs., L.P.*, No. 17 CV 4554 (ARR)(CLP), 2018 WL 451637 (E.D.N.Y. Jan. 17, 2018)............................................................................................................................... 20

*Citibank, N.A. v. Balsamo*, 41 N.Y.S.3d 744 (N.Y. App. Div. 2016).......................................... 21

*Clomon v. Jackson,* 988 F.2d 1314 (2d Cir.1993) ....................................................................... 17

*Cohen v. Rosicki, Rosicki, & Assoc., P.C.*, 897 F.3d 75 (2d Cir. 2018) ....................... 6, 8, 11, 16

*Colorado Capital v. Owens*, 227 F.R.D. 181 (E.D.N.Y. 2005).................................................... 25

*De La Cruz v. Fin. Recovery Servs., Inc.*, No. 17 CIV. 9931 (PGG), 2019 WL 4727817 (S.D.N.Y. Mar. 28, 2019) ....................................................................................................... 19

*Easterling v. Collecto, Inc.*, 692 F.3d 229 (2d Cir. 2012) .................................................... 10, 13

*Feinstein v Bergner*, 397 N.E.2d 1161 (N.Y. 1979)....................................................................... 9

*Frintzilas v. DirectTV, LLC*, 731 Fed. Appx. 71 (2d Cir. 2018) ................................................. 24

*Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163 (E.D.N.Y. 2013). .................... 14, 24

*Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89 (2d Cir. 2012) ......................... 21

*Gidmul v. Cagney*, 2015 WL 4698758 (N.Y. Sup. Ct. 2015)...................................................... 27

*Gidumal v. Cagney*, 144 A.D.3d 550 (N.Y. App. Div. 2016), ................................................... 27

*Grigoriou v. First Resolution Inv. Corp.*, No. 13 CV 6008 (CJS), 2014 WL 1270047 (W.D.N.Y. Mar. 26, 2014)...................................................................................................................... 15

*Guzman v. Mel S. Harris & Assocs., LLC*, No. 16 CV 3499 (GBD), 2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018) ............................................................................................... 9, 19, 22

*Heintz v. Jenkins*, 514 U.S. 291, 293 (1995)...................................................................... 13, 14, 16

*Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CV 8779 (ER), 2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017) ...................................................................................................................... 22

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Cir. 1998)............... 21

*Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16 CV 9945 (KMK), 2019 WL 2647598 (S.D.N.Y. June 27, 2019)................................................................................................ 16

*Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430 (E.D.N.Y. 2013)............... 23

*Kelsey v. Forster & Garbus, LLP*, 353 F. Supp. 3d 223 (W.D.N.Y. 2019)........................... 11, 12

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ........................................................ 16

*Lautman v. 2800 Coyle St. Owners Corp.*, No. 14 CV 1868, 2014 WL 4843947 (E.D.N.Y. Sept. 26, 2014) .................................................................................................. 15

*Lindor v. Palisades Collection, LLC*, 30 Misc. 3d 754 (Sup. Ct. 2010)..................................... 26

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ........................................ 28

*Lorenz v. GE Capital Retail Bank*, 944 F. Supp. 2d 220 (E.D.N.Y. 2013................................... 16

*Macchia v. Russo*, 1986, 67 N.Y.2d 592 (1986)................................................................... 9

*Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808 (7th Cir. 2016)............................... 16

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015)........................ 9, 19, 23, 24

*Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) .........................................................................................................................11, 12

*Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743 (Dist. Ct. 2013)..................................... 24

*Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017) ..................................................... 12

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003)........................................ 17

*Morris v. Gilbert*, 649 F. Supp. 1491 (E.D.N.Y. 1986).................................................. 28

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .................................. 7, 19

*New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002)................................................ 5, 23

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107 (2d Cir. 2017). ........................ 22

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508 (S.D.N.Y. 2013)........................... 16

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522 (S.D.N.Y. 2013)........................... 18

*O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011) .............................. 16

*Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 26 (N.Y. 1995). ................................................................................................................ 24, 25

*Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484 (S.D.N.Y. 2014) ................................. 15

*Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547 (S.D.N.Y. 2013) ....................... 8, 19

*Raschel v. Rish*, 69 N.Y.2d 694 (1986)................................................................................. 10

*Ricketts v. City of Hartford,* 74 F.3d 1397 (2d Cir. 1996) ....................................................... 28

*Rosenberg v. Client Servs., Inc.*, No. 19 CV 6181 (VB), 2020 WL 2732017 (S.D.N.Y. May 26, 2020) .................................................................................................................. 19

*Sanchez v. Ehrlich*, No. 16 CV 8677 (LAP), 2018 WL 2084147 (S.D.N.Y. Mar. 29, 2018). 21, 25

*Schaefer v. IC Sys., Inc.*, No. 17 CV 1920 (FBS) (JB), 2020 WL 1083633 (E.D.N.Y. Mar. 6, 2020) .................................................................................................................. 19

*Scott v. Greenberg.,*No. 15 CV 05527 (MKB), 2017 WL 1214441(E.D.N.Y. Mar. 31, 2017)..... 8, 19, 22

*Shaw v. Shaw*, 97 A.D.2d 403 (N.Y. App. Div. 1983) ................................................. 27

*Simmons v. Roundup Funding, LLC*, 622 F. 3d 93 (2d Cir. 2010) ............................... 16

*Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201 (E.D.N.Y. 2019) ............... 18

*Stutman v. Chemical Bank*, 95 N.Y.2d 24 (N.Y. 2000) ............................................. 24

*Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279 (S.D.N.Y. 2012). ..................... 16

*Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............... 19

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)........................... 8, 13, 22, 28

*Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433 (2d Cir. 2018) ....................... 5

*Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 11 CV 1111 (SRU), 2012 WL 4372251 (D. Conn. Sept. 24, 2012) ................................................................................. 16

*Washington Mut. Bank v. Murphy*, 127 A.D.3d 1167 (N.Y. App. Div. 2015) ............... 27

## Federal Rules, Statutes, and Regulations

15 U.S. Code §1692 .............................................................................................. passim

28 U.S.C. § 1367 ...................................................................................................... 21

Federal Rule of Civil Procedure 12 ................................................................... 5, 28

## State Rules, Statutes, and Regulations

New York General Business Law (G.B.L.) § 349 ............................................... passim

New York City Administrative Code § 20-409.2. ........................................ 1, 25, 26, 27

## PRELIMINARY STATEMENT

Plaintiffs' Complaint specifically and comprehensively pleads that Defendants prepared, signed, and filed over a thousand false affidavits of service in New York City Civil Court debt collection actions, including actions against the four Named Plaintiffs and members of the putative class ("Class Members"). These allegations are more than adequate to state claims under the Fair Debt Collection Practices Act (FDCPA), New York General Business Law (G.B.L.) § 349, New York common law negligence, and the New York City Administrative Code § 20-409.2. Indeed, courts in this Circuit have often found virtually identical practices unlawful.

Defendants' leading argument in support of dismissal is that their falsified affidavits of service, though literally false, were not actually materially misleading because Plaintiffs knew that the people named in the affidavits of service did not exist. In other words, Defendants base their motions to dismiss on the theory that they are free to lie in their sworn affidavits and file those affidavits in court, so long as the Plaintiffs know that the affidavits are false. This is simply not the law. Defendants' sewer service and false affidavits of service impeded consumers' ability to respond to the lawsuits filed against them and dispute collection of their debts through litigation. Under Second Circuit precedent, these false statements are material and violate the FDCPA.

Defendants' other main argument, that the affidavits of service cannot violate the FDCPA because they were filed with the court rather than sent to consumers directly, is foreclosed by the Second Circuit: "[W]here court filings routinely come to the consumer's attention and may affect his or her defense of a collection claim, debt collectors do not have immunity from FDCPA liability for their litigation conduct." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 137 (2d Cir. 2017) (quotations omitted). Moreover, the Complaint alleges that these

affidavits of service were, in fact, often sent directly to Plaintiffs and Class Members (as required by New York law).

Defendants' arguments relating to Plaintiffs' state and city law claims also fail, for largely the same reasons. Defendants' conduct was deceptive and consumer-oriented, in violation of G.B.L. § 349, constituted a breach of their duty to exercise care in collecting debts, and violated city rules governing process servers.

Defendants' motions to dismiss should be denied.

## FACTUAL BACKGROUND

Plaintiffs Jackie Burks, Brunilda Pagan Cruz, Venus Cuadrado, and Rhonda Drye brought this action on behalf of themselves and over a thousand putative class members to challenge a coordinated unlawful scheme to extract money from New York City consumers by systematically falsifying affidavits of service and filing those affidavits of service in debt collection lawsuits in New York City Civil Court. Plaintiffs bring claims against Defendants Mullooly, Jeffrey, Rooney & Flynn, LLP ("Mullooly"), a debt collection law firm; Gotham Process, Inc. ("Gotham"), a process serving agency retained by Mullooly; and Bassem Elashrafi and Carl Bouton (with Gotham, the "Process Server Defendants"), individual process servers retained by Gotham. *See generally* Am. Compl., ECF No. 27.

Mullooly, on behalf of its debt buyer client, Unifund CCR, LLC, sued Ms. Burks, Ms. Cruz, Ms. Cuadrado, and Ms. Drye in New York City Civil Court to collect on allegedly unpaid debts. Am. Compl. ¶¶ 162, 206, 233, 256. In the affidavit of service in each lawsuit, Elashrafi or Bouton, on behalf of Gotham, swore that he effectuated service by handing the summons and complaint to a person who "identified himself [or herself] as [a] relative of" each Plaintiff. *Id.* ¶¶ 166, 210, 237, 261. Specifically, Elashrafi swore that he effectuated service on Ms. Burks by handing the summons and complaint to "Christina Burks" and on Ms. Cruz by handing the

2

summons and complaint to "Daniel Cruz"; Bouton swore that he effectuated service on Ms. Cuadrado by handing the summons and complaint to "Anthony Cuadrado" and on Ms. Drye by handing the summons and complaint to "Richard Drye." *Id.* However, the "Christina Burks," "Daniel Cruz," "Anthony Cuadrado, and "Richard Drye" listed in the affidavits of service do not exist. *Id.* ¶¶ 168, 212, 239, 263.

Plaintiffs do not have any relatives by those names and do not know anyone by those names. *Id.* ¶¶ 169, 213, 240, 264. None of the Plaintiffs were ever served. *Id.* ¶¶ 163, 207, 234, 258. No attorney at Mullooly meaningfully reviews the affidavits of service; if attorneys at Mullooly meaningfully reviewed the affidavits of service, they would see that they are facially implausible because, as described above, virtually all the affidavits of service purport to make substitute service on a relative. *Id.* ¶¶ 104-05. Nonetheless, Gotham, at the direction of Mullooly, filed the false affidavits of service in court. *Id.* ¶ 102.

The same form affidavits of service were filed in the lawsuits against each Class Member, just as they were in the cases against Named Plaintiffs, with the only differences being the identifying case information and the name and description of the purported relative. *Id.* ¶¶ 63- 84. NYLAG reviewed approximately three hundred cases filed by Mullooly in New York City Civil Court that contain affidavits of service signed by Elashrafi or Bouton, on behalf of Gotham. *Id.* ¶ 69. In 94% of those three hundred cases, Elashrafi or Bouton claimed to have effectuated service by handing the summons and complaint to a person who identified himself or herself as a relative of the person served. *Id.* ¶ 70.

Because they were never served, Named Plaintiffs became aware of the lawsuits filed against them not through lawful service of process, but in some other way. Ms. Burks only learned that a lawsuit had been filed against her when Mullooly attempted to garnish her wages

— after Mullooly obtained a default judgment against her. *Id.* ¶ 163-64. Ms. Cruz and Ms. Drye only learned about the lawsuits against them because attentive neighbors found their court papers, *id.* ¶¶ 207-08, 258-59, and Ms. Cuadrado only learned about that she had been sued after her mother received court papers in the mail, *id.* ¶¶ 234-35. It is likely that many Class Members remain unaware of the lawsuits filed against them; consumers filed an answer or appeared in court to defend themselves in only approximately 17% of the cases against Sampled Class Members. *Id.* ¶¶ 60-61.

Mullooly seeks, and obtains, default judgments against many Class Members who do not appear in court. *Id.* ¶ 107. In the lawsuit filed against Ms. Burks, Mullooly obtained a default judgment on the basis of an application that included Elashrafi's affidavit of service, as well as a sworn statement by a Mullooly attorney that Ms. Burks "failed to appear, answer or move, and the time to do so has expired." *Id.* ¶¶ 176-79. Moreover, when Class Members challenge the falsified affidavits, Mullooly files and prepares boilerplate opposition papers, which contain no specific facts as to service, signed by a Mullooly attorney under penalty of perjury. *Id.* ¶ 117. For example, when Ms. Burks filed a Motion to Vacate the judgment against her, Mullooly attached Elashrafi's affidavit of service and stated that Ms. Burks's "assertion that she was not served is refuted by [this] affidavit of service." *Id.* ¶¶ 118, 197. By filing these boilerplate oppositions without any specific facts, Mullooly prolongs legal proceedings, as the inevitable and foreseeable effect of filing these oppositions is that consumers must appear at one or more additional court dates for the motions. *Id.* ¶ 121.

Defendants' scheme harms Named Plaintiffs and Class Members. Defendants harm Class Members by collecting pursuing to the lawsuits and obtaining default judgments, which can lead to enforcement actions including bank freeze and levy, and wage garnishment. *Id.* ¶¶ 40-41, 155-

60. Furthermore, Named Plaintiffs and Class Members expend time and money attending court dates and incur out-of-pocket expenses, such as for transportation, photocopying, and postage, and experience emotional harm. *Id.* ¶¶ 155-60, 201-04, 226-30, 251-54, 278-81.

Plaintiffs initiated this action on February 24, 2020, and filed an Amended Complaint on July 17, 2020. On September 4, 2020, Defendants filed two motions to dismiss. Mem. of Law in Support of Def. Mullooly's Mot. to Dismiss ("Mullooly Mem."), ECF No. 29-3; Mem. of Law in Support of Process Server Defs.' Mot. to Dismiss and Strike ("PS Mem."), ECF No. 30-3.

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff[s'] favor." *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018) (quotations and alterations omitted). The FDCPA is construed "liberally to effectuate the overriding statutory purpose, which is to eliminate abusive debt collection practices by debt collectors. . . ." *Id.* (quotations omitted). Claims under New York General Business Law § 349 are also "construed liberally." *See New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (courts construe liberally the question of whether a defendant's actions cause "consumer injury or harm to the public interest") (citations omitted).

## ARGUMENT

## I.     Plaintiffs Have Adequately Alleged a Violation of § 1692e of the FDCPA.

Defendants acknowledge that the Complaint alleges that their affidavits of service were false but, nonetheless, argue that failing to serve consumers and then preparing, signing, and filing these false affidavits does not violate the FDCPA's prohibition on the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e. Defendants make two arguments: (1) that they did not materially mislead

Plaintiffs, Mullooly Mem. 10-18, PS Mem. 9-11, and (2) that the false affidavits were not directed to Plaintiffs, Mullooly Mem. 18-20, PS Mem. 5-9. Neither argument is valid.

### A. Sewer Service and Falsified Affidavits of Service Plainly Impede Consumers' Ability to Respond to Debt Collection Lawsuits.

Defendants argue that they should not be subject to FDCPA liability under §1692e because the false and deceptive statements made in their sewer service scheme were so egregiously false that the Plaintiffs could not possibly have been "materially misled" by them. Specifically, Defendants claim that, because Plaintiffs knew that the made-up relatives to whom the process servers claimed to have handed summonses and complaints did not exist, the blatantly-falsified affidavits of service signed and filed by the Process Server Defendants and relied upon and defended by Mullooly in over a thousand consumer debt collection cases are not actionable under the FDCPA. Mullooly Mem. 11-12; PS Mem. 11. This absurd interpretation of the FDCPA and related caselaw must fail.

The Second Circuit has held that, to violate the FDCPA, a false, deceptive, or misleading representation must be "material," meaning that it must be "capable of influencing the decision of the least sophisticated [consumer]." *Cohen v. Rosicki, Rosicki, & Assoc., P.C.*, 897 F.3d 75, 86 (2d Cir. 2018) (quotation omitted). The Second Circuit further explained that the key inquiry is whether the false statements impair the consumer's ability to respond to the debt collection efforts:

> The materiality inquiry focuses on whether the false statement would frustrate a consumer's ability to intelligently choose his or her response. As we have explained, our case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA. By contrast, mere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e.

*Id.* at 86 (quotations and alteration omitted).

Defendants' sewer service and falsified affidavits of service certainly "impede a consumer's ability to respond to or dispute collection" of their debts and are thus straightforwardly "material" under the FDCPA. *See id.* Defendants' failure to serve consumers with notice of the actions against them, and preparation and filing of false affidavits claiming to have served them, completely deprives many consumers of *any* notice of the actions against them. Am. Compl. ¶¶ 9, 58, 60, 113-114, 155-156, 159, 163. This deprives consumers of critical constitutional due process protections. As the United States Supreme Court has repeatedly held,

> The fundamental requisite of due process of law is the opportunity to be heard. . . . An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (quotation omitted).

Because of Defendants' sewer service and false affidavits of service, many Class Members do not know that they have been sued and are entirely deprived of an opportunity to appear in court and present a defense. Am. Compl. ¶¶ 58, 60-61, 107-113, 155-156, 177-179. They risk having judgments entered against them that are collectable for the next twenty years. *Id.* ¶¶ 40, 107-12. For example, because Defendants failed to serve Ms. Burks with process and filed a false affidavit of service, Ms. Burks only learned about the action filed against her after Defendants obtained a default judgment and sought to garnish her wages. *Id.* ¶¶ 162-163. Ms. Burks was wholly deprived of the opportunity to appear in court and raise her defenses — including that she believed she was a victim of identify theft, *see id.* ¶ 182 — before a judgment

was entered against her and she was threatened with garnishment.[1] Ms. Burks is not alone; only about 17% of Class Members appeared in court. *Id.* ¶ 61. For these consumers, certainly including the "least sophisticated" among them, Defendants' sewer service wholly "frustrate[d]" their "ability to intelligently choose [their] response[s]" to Defendants' lawsuits, and was thus material. *Cohen*, 897 F.3d at 86.

Numerous courts in the Second Circuit have concluded that sewer service falls squarely within the actions prohibited by section 1692e of the FDCPA. *See, e.g.*, *Carroll v. U.S. Equities Corp.*, No. 18 CV 667 (TJM)(CFH), 2019 WL 4643786, at *7 (N.D.N.Y. Sept. 24, 2019) ("It is recognized that the practice of obtaining a default judgment by filing false affidavits of service, colloquially referred to as 'sewer service,' presents an actionable claim under the FDCPA.") (collecting cases). For example, in *Sykes v. Mel S. Harris & Assocs. LLC*, the Second Circuit affirmed the certification of a class bringing, *inter alia*, a claim that defendants violated the FDCPA by filing false affidavits of service in New York City Civil Court debt collection proceedings, which is essentially indistinguishable from Plaintiffs' allegations here. 780 F.3d 70, 84 (2d Cir. 2015). Similarly, in *Scott v. Greenberg*, the court explained that "[t]he practice of 'sewer service,' which includes filing a false affidavit of service, violates the FDCPA," and, specifically, that plaintiff "state[d] a claim under section 1692e because [she] allege[d] that the physical description included in the affidavit of service does not match her own physical description or the description of anyone living with [her] at the time of the alleged service." 15 CV 05527 (MKB), 2017 WL 1214441, at *11 (E.D.N.Y. Mar. 31, 2017); *see also, e.g.*, *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547, 550 (S.D.N.Y. 2013) ("[S]ewer service

---

[1] Contrary to the Process Server Defendants' insinuations, *see* PS Mem. 2 n.1, 3, 17, whether or not Plaintiffs owed the alleged debts is irrelevant to their claims. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015) ("The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." (quoting *Baker v. G.C. Svcs. Corp.*, 677 F.2d 775, 777 (9th Cir.1982)).

practice, followed by obtaining a default judgment, falls squarely within prohibited acts under

the FDCPA. 15 U.S.C. § 1692e."); *Guzman v. Mel S. Harris & Assocs., LLC*, No. 16 CV 3499

(GBD), 2018 WL 1665252, at *9 (S.D.N.Y. Mar. 22, 2018); *Mayfield v. Asta Funding, Inc.*, 95

F. Supp. 3d 685, 702 (S.D.N.Y. 2015) (finding "alleged scheme to collect debts through

fraudulent means," including fraudulent affidavits of service, violates FDCPA).

Defendants' sewer service and falsified affidavits of service are also material because of

their effect on consumers who find out about the lawsuits by mail or other unauthorized means

rather than lawful service of process. The "least sophisticated consumer" who receives a

summons and complaint by regular mail may not understand that she is being sued and needs to

respond. The New York Court of Appeals has held that, in New York, proper service of process

is an absolute prerequisite to court jurisdiction. *Macchia v. Russo*, 1986, 67 N.Y.2d 592, 594

(1986). Lawful service of process is an absolute requirement, and a threshold jurisdictional issue

for a reason: a consumer, particularly an unsophisticated one, is much more likely to understand

the gravity of court papers if they are personally handed to her or to a relative than if they simply

arrive in the mail, just like any ordinary collection letter that the consumer may have received by

mail from the debt collector in the past. *See Feinstein v Bergner*, 397 N.E.2d 1161 (N.Y. 1979)

(finding that the law requires strict adherence to service of process rules to ensure that

defendants receive actual notice of the pendency of litigation against them so they can properly

respond to the lawsuit).

Defendants incorrectly argue that their falsehoods are not materially misleading to

consumers like Ms. Cruz, Ms. Cuadrado, and Ms. Drye, who received the summons and

complaint by mail or another unauthorized means, realized that they were being sued, and

appeared in the lawsuit to defend themselves. *See* Mullooly Mem. 13, PS Mem. 10; Am. Compl.

¶¶ 10, 114-124, 157-160. This argument must fail. At the outset, "the least sophisticated consumer test pays no attention to the circumstances of the particular [consumer] in question" or how the particular consumer acted in response to the materially misleading statement. *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (holding that the lower court erred in finding that a debt collector's false statement that plaintiff's student loans were ineligible for discharge in bankruptcy was not material because the plaintiff had not sought to discharge her student loans in bankruptcy). Likewise, in *Arias*, the Second Circuit reinforced its prior conclusion that misrepresentations may be actionable under FDCPA §1692e even if the plaintiff himself was not misled by the false statements. The Court affirmed that the "operative inquiry . . . is whether the hypothetical least sophisticated consumer" would be misled, not whether the plaintiff was actually misled by the debt collector's false statements. 875 F.3d at 137 (rejecting debt collector's argument that plaintiff failed to state a claim under §1692e because plaintiff knew that the debt collector's statements were false) (quoting *Easterling*, 692 F.3d at 234).

Regardless, Defendants' sewer service and falsified affidavits of service "impede [these] consumer[s'] ability to respond to or dispute collection" in multiple ways, and are thus material. *See Cohen*, 897 F.3d at 86. In New York, if service is not made in an authorized manner, a defendant can challenge the court's jurisdiction even if she received actual notice of the action against her. *See Raschel v. Rish*, 69 N.Y.2d 694, 697 (1986) ("When the requirements for service of process have not been met, it is irrelevant that defendant may have actually received the documents."). However, consumers — virtually all of whom are unrepresented — are unlikely to know that their cases could be dismissed due to Defendants' failure to properly serve them with summonses and complaints. Am. Compl. ¶¶ 116, 157-158. Defendants' false affidavits of service "surely ha[ve] the potential to affect the[ir] decision-making process," because these

"consumer[s] likely would respond differently to an unauthorized complaint than he or she would to a complaint lawfully filed." *Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, 419 F. Supp. 3d 668, 705 (S.D.N.Y. 2019) (quotation and alteration omitted). Even consumers who do attempt to challenge the lawfulness of service face an uphill battle due to the specific false statements in Defendants' false affidavits of service. These consumers must prove a negative, by convincing the Civil Court judges that the individuals named and described in the affidavits do not exist. Am. Compl. ¶¶ 115-124; *see also, e.g.*, *id.* ¶ 275 (Ms. Drye, at the evidentiary hearing, had to testify that the "Richard Drye" listed in the affidavit of service did not exist), *id.* ¶¶ 181-204 (Ms. Burks spent extensive time and energy filing and litigating a motion to vacate, including responding to false opposition papers and testifying at two evidentiary traverse hearings at which Mullooly elicited false testimony from Elashrafi). Contrary to Defendants' assertions, *see* Mullooly Mem. 15-16, these false statements, compounded by Defendants' bad faith efforts to conceal their sewer service practice when challenged by Plaintiffs, clearly impeded Plaintiffs' opportunity to "avail[] themselves of their legal rights.'" *Arias*, 875 F.3d at 136 (quotation omitted).

The cases cited by Defendants offer no support for their position. In *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, (cited at Mullooly Mem. 10, PS Mem. 8-9), the court considered a statement that a mortgage servicer was the "creditor" of the plaintiff's account. 897 F.3d at 75. The Second Circuit concluded that "although it may have technically been legally inaccurate . . . this statement was not false or misleading in any material way" because it was "false only insofar as it results from the different definitions of 'creditor' in the FDCPA and New York law." *Id.* at 86-87. There is no such legal dispute here. Similarly, in *Kelsey v. Forster & Garbus, LLP*, the Court declined to impose FDCPA liability for an attorney affirmation stating that the plaintiff

11

had failed to answer or otherwise appear in a state court action, finding that "the attorney affirmation filed in state court was 'technically accurate' because Plaintiff 'did not appear in the [state court] action as contemplated under CPLR 320(a)' . . . because Plaintiff, then proceeding pro se, failed to serve his answer on Defendant." 353 F. Supp. 3d 223, 228 (W.D.N.Y. 2019). There is no related argument here that Defendants' affidavits were accurate under New York law. And *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14 CV 1868, 2014 WL 4843947, at *11 (E.D.N.Y. Sept. 26, 2014) (cited at Mulooly Mem. 12-13), is irrelevant because here, Plaintiffs clearly allege that Defendants' failure to serve them and false statements impeded their ability to respond to or dispute collection, whereas in that case, the court found that "[n]owhere does[the] complaint allege that the[y] misled plaintiff regarding the nature or status of his debt or his ability to challenge the debt."

Mullooly further argues that Defendants' false statements could not be materially misleading because they occurred in state court, which offers "protections against litigation misconduct." Mullooly Mem. 13. However, the Second Circuit has decided that this argument does not carry the day. Whereas bankruptcy proceedings offer "special protections" that have led courts to conclude that under some circumstances the FDCPA does not apply there, *Arias*, 875 F.3d at 137 (citing *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017)), the state courts do not. The FDCPA protects litigants in state courts, who are "often unfamiliar with the . . . law" and, in many cases, have "the benefit of neither counsel nor a bankruptcy trustee." *Id.; see also, e.g.*, *Michelo*, 419 F. Supp. 3d at 668. Therefore, "debt collectors do not have immunity from FDCPA liability for their litigation conduct" in state court. *Arias*, 875 F.3d at 137; *see also, e.g.*, *Kelsey,* 353 F. Supp. 3d at 234 ("FDCPA defendants may not avoid liability by couching false or misleading statements made in furtherance of a legal action as mere legal

advocacy."). Nor can Defendants claim that Plaintiffs here had greater "protection[s]" in state

court than the *Arias* plaintiff did. Mullooly Mem. 13. The *Arias* court considered FDCPA claims

arising out of misconduct in a state court lawsuit in Bronx Civil Court — the exact same court

where Defendants sued Ms. Cruz, Ms. Cuadrado, and Ms. Drye. *See Arias v. Gutman, Mintz,*

*Baker & Sonnenfeldt, P.C.*, No. 15 CV 09388 (GBD), 2016 WL 3443600, at *1 (S.D.N.Y. June

8, 2016); Am. Compl. ¶¶ 206, 233, 256.

Contrary to Mullooly's argument, *see* Mullooly Mem. 14, the fact that Plaintiffs were

successful in having the judgments against them vacated and/or the actions against them

dismissed does not somehow render Defendants' false statements not materially misleading. The

resolution of the state court collection actions does not affect the materiality of Defendants' false

statements, because Plaintiffs' "claims sounding under the FDCPA . . . speak not to the propriety

of the state court judgments, but to the fraudulent course of conduct that defendants pursued in

obtaining such judgments." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir.

2015). Moreover, "the least sophisticated consumer test pays no attention to the circumstances of

the" Plaintiffs. *Easterling*, 692 F.3d at 234. Nor does applying the FDCPA to deceptive

statements in state court actions "disrupt[]" the principles of federalism, Mullooly Mem. 15. *See,*

*e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995) (FDCPA "applies to the litigating activities of

lawyers," including in state court).

**B.  The FDCPA Does Not Shield Debt Collectors Who to Lie to Courts.**

Defendants next argue that their false affidavits of service did not violate § 1692e

because they were filed with the court rather than sent directly to Plaintiffs and Class Members.

Mullooly Mem. 18-20, PS Mem. 5-9. This argument is precluded by Second Circuit precedent.

In 2017, in *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, the Second Circuit stated that

"where court filings routinely come to the consumer's attention and may affect his or her defense of a collection claim, debt collectors do not have immunity from FDCPA liability for their litigation conduct." 875 F.3d at 137 (quotations omitted). Because consumers sued in state court are "often unfamiliar with the law," *id.*, the FDCPA provides them important protection that extends to false court filings.

The rule from *Arias* applies here, as the affidavit of service is a court filing that "routinely come[s] to the consumer's attention and may affect his or her defense of a collection claim." *Arias*, 875 F.3d at 137 (quotations omitted). Affidavits of service routinely come to consumers' attention; under New York State law, they are required to be included in any default judgment motion and any opposition to a motion challenging service. N.Y. C.P.L.R. §§ 3211(e), 3215(f). Moreover, the Complaint alleges Defendants regularly provided affidavits of service to consumers, as they were attached to opposition papers that Mullooly filed against Ms. Burks and Class Members, *see* Am. Compl. ¶¶ 117-118, 176, and Ms. Cuadrado and Ms. Drye reviewed them in the course of attempting to obtain dismissal of the actions filed against them, *see id.* ¶¶ 248, 272. And, as explained above, these false affidavits of service may affect consumers' defense of collection claims: because they were never served, many consumers never have the opportunity to defend themselves, and even those who do find out about the lawsuits in some other way may not know to respond, or face an uphill battle when doing so.

*Arias* made explicit what courts have long held — that FDCPA claims may proceed based on false statements in court filings made by debt collectors in state court debt collection litigation. *See, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013). This rule has been repeatedly applied to precisely this situation, and, accordingly, courts have found that filing false affidavits of service

violates § 1692e of the FDCPA. *Carroll*, 2019 WL 4643786, at *7 (collecting cases); *see also Polanco*, 930 F. Supp. 2d at 550; *Scott,* 2017 WL 1214441, at *11 *Guzman*, 2018 WL 1665252, at *9 (similar); *Mayfield*, 95 F. Supp. 3d at 702.

Defendants' arguments to the contrary are unavailing. Mullooly does not even attempt to distinguish *Arias* or this long line of cases; the Process Server Defendants unpersuasively try to do so by suggesting that in *Arias*, the false statements filed with the court "were intended to be sent to [consumers] since they were directly designed to counter plaintiff's own actions" whereas here, the false affidavits of service filed with the court "were not 'in response' to anything Plaintiffs did or did not do." PS Mem. 8. This reasoning does not come from *Arias*, and makes no sense. Whether a false filing is the first in a court case or the last, it could come to a consumer's attention and affect his or her defense of the action.

Defendants' other arguments are equally flawed. The only two cases cited by Defendants that even relate to this issue are *Grigoriou v. First Resolution Inv. Corp.*, No. 13 CV 6008 (CJS), 2014 WL 1270047, at *7 (W.D.N.Y. Mar. 26, 2014) (cited at Mullooly Mem. 20) and *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14 CV 1868, 2014 WL 4843947 (E.D.N.Y. Sept. 26, 2014) (cited at Mullooly Mem. 19, PS Mem. 5). But both of these cases involved *pro se* plaintiffs who made sweeping claims and failed to allege that they were misled by Defendants' purportedly misleading statements; most importantly, both of these decisions pre-dated the Second Circuit's clear statement of the law in *Arias*. Even before *Arias*, these cases were in the minority; most decisions recognized statements to the court as falling under the statute's purview. *See Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 491 (S.D.N.Y. 2014) ("[C]ourts have recognized that communications with a third party are actionable under the statute." (collecting cases)). Neither should be relied upon in the face of the clear weight of authority.

15

The remaining cases cited by Defendants are not relevant here:

- In *Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) (cited at Mullooly Mem. 18, PS Mem. 6), the Second Circuit held that a person who opened a debt collector's letter had "no standing" to sue under the FDCPA because the letter was addressed to someone else. *See id.* at 130 ("[P]rohibited language in the letter sent to [one person] cannot create a cause of action for [another person] merely because she read the letter containing the threat."). Plainly, this does not apply here, where no Class Member is challenging false statements made in an effort to collect debt from *someone else*.

- *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) (cited at Mullooly Mem. 18-19) and *Lorenz v. GE Capital Retail Bank*, 944 F. Supp. 2d 220 (E.D.N.Y. 2013) (cited at Mullooly Mem. 20) involve communications to third parties other than a court (the city marshal and Social Security Administration, respectively), which is not an issue here.

- The Seventh, Eighth, and Ninth Circuit decisions (cited at Mullooly Mem. 18-19 & n.4, PS Mem. 6-7) are obviously not binding. The Second Circuit has expressly declined to adopt the reasoning of *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 944 (7th Cir. 2011) (cited by Defendants at Mullooly Mem. 18-19, PS Mem. 6-7). *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 290 n.9 (S.D.N.Y. 2012). Moreover, these decisions do not accurately represent the state of the law in those Circuits. For example, in *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016), the Seventh Circuit held that "representations may violate § 1692e of the FDCPA even if made in court filings in litigation," which is consistent with the Second Circuit's holding in *Arias*.

- *Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16 CV 9945 (KMK), 2019 WL 2647598 (S.D.N.Y. June 27, 2019) (cited at Mullooly Mem. 20, PS Mem. 7), is simply not relevant to this issue. The court did not address, or decide, whether alleged false statements were made directly to the plaintiff, or whether the FDCPA would so require.

- *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 11 CV 1111 (SRU), 2012 WL 4372251, at *5 (D. Conn. Sept. 24, 2012) (cited at Mullooly Mem. 20), noted in passing that false statements were "directed at the *court*," but this observation was made only in a discussion about materiality and the court did not base any decision on it.

- *Simmons v. Roundup Funding, LLC*, 622 F. 3d 93 (2d Cir. 2010) (cited at PS Mem. 6), involves claims arising from a bankruptcy. The Second Circuit has explained that "the rationale" behind *Simmons* and other cases that exclude certain bankruptcy proceedings from the FDCPA does not apply here, because a consumer in a state court debt collection proceeding does not have "the special protections afforded a consumer" in bankruptcy, such as "a knowledgeable trustee." *Arias*, 875 F.3d at 137 (quotations omitted).

- *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 83-84 (2d Cir. 2018) (cited at PS Mem. 8), held that the FDCPA applies to foreclosure actions and treated false court

filings in such actions as within the ambit of the FDCPA. This case in no way suggests that any court filings would be excluded from the FDCPA's protections.

Under the Second Circuit's plain language and well-established precedent, Plaintiffs have stated a violation of 1692e.

### C.  Defendants Have Not Challenged Plaintiffs' § 1692e Claims Based on "Meaningful Attorney Review" or False Statements in Other Court Filings.

In any event, Plaintiffs' FDCPA claim will survive Defendants' motions, because Defendants have not even attempted to argue for dismissal of Plaintiffs' FDCPA claim based on Defendants' lack of "meaningful attorney review," Am. Compl. ¶¶ 102-106, 121-124, 299(d), which is well-recognized in this Circuit as a violation of § 1692e. *See, e.g., Clomon v. Jackson,* 988 F.2d 1314, 1321 (2d Cir.1993); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003). Nor have defendants challenged Plaintiffs' FDCPA claim based on Mullooly's false statements in court filings other than the affidavit of service, Am. Compl. ¶¶ 109-11, 117-20, 177-78, 184, 299(e-f).

### II.      Plaintiffs Have Adequately Alleged a Violation of § 1692f of the FDCPA.

### A.  Defendants Misstate the Relationship Between §§ 1692e and 1692f

While the prohibition on misrepresentations in Section 1692e of the FDCPA "targets practices that take advantage of a debtor's naivete or lack of legal acumen," Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt" and is "aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias*, 875 F.3d at 135-36; 15 U.S.C. §1692f. "A collection practice could be unfair without necessarily being deceptive, could be deceptive without being unfair, or could be both deceptive and unfair." *Arias*, 875 F.3d at 136 (quotations omitted). Accordingly, the Second Circuit has held that Sections 1692e and 1692f are not "mutually exclusive"; rather, "the same conduct by a debt collector can[] violate both sections at once." *Id.* at 135-36 (quotations

17

omitted); *see also Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201, 214 (E.D.N.Y. 2019).

Defendants make three flawed arguments that Plaintiffs' 1692f claim should be dismissed, each of which is grounded in an incorrect understanding of the relationship between 1692e and 1692f. First, they argue Plaintiffs' 1692f claim fails because it is based on the same conduct underlying their 1692e claim, Mullooly Mem. 20-21, PS Mem. 11; second, they argue that the Section 1692f claim fails because that claim "is specifically covered by Section 1692e," Mullooly Mem. 21. Both of these arguments fail, because the Second Circuit has held that conduct can be "both deceptive and unfair," thus violating both provisions. *Arias*, 875 F.3d at 136. Third, Defendants argue that "the Section 1692f claim fails for the same reasons that the Section 1692e claim fails," Mullooly Mem. 21, but this is wrong because conduct could be "unfair without . . . being deceptive," so even conduct that does not give rise to a § 1692e violation can violate § 1692f. *Arias*, 875 F.3d at 136.[2]

**B.  Defendants' Sewer Service Is Unfair and Unjust**

Defendants' preparing, signing, and filing of false affidavits of service in order to conceal debt collection actions filed against Plaintiffs and over a thousand other New Yorkers, as alleged in the complaint, is precisely the sort of "shockingly unjust or unfair" means of debt collection that § 1692f was enacted to prohibit. *Arias*, 875 F.3d at 135 (quotations omitted). Indeed, it is difficult to imagine a debt collection practice that "affront[s] the sense of justice, decency, or reasonableness," *id.*, more than what Plaintiffs allege here: Defendants initiated debt collection lawsuits, failed to serve Plaintiffs with the summons and complaint, falsely swore that the

---

[2] Additionally, Mullooly's argument that Plaintiffs' claims should be dismissed because "[t]he Complaint does not identify which subsections of Section 1692f that [Mullooly] allegedly violated," Mullooly Mem. 22, is a non-starter. The list of sub-sections of § 1692f is "non-exhaustive," and "Section 1692f's prefatory clause— prohibiting unfair or unconscionable conduct—is a catchall provision that provides a cause of action standing alone." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013) (quotations omitted).

complaint was served by conjuring a fake name and identity for the person purportedly serviced, filed the false affidavit of service, and then proceeded to litigate the actions. This is certainly unfair to the "least sophisticated consumer," *Arias*, 875 F.3d at 135, who would not know that any action against her had been filed at all. For these reasons, courts considering similar allegations have found a violation of § 1692f. *See, e.g.*, *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 424 (S.D.N.Y. 2010) (finding § 1692f violation based on very similar allegations of sewer service); *Scott*, 2017 WL 1214441, at *13; *Polanco*, 930 F. Supp. 2d at 552; *Carroll*, 2019 WL 4643786, at *7; *Guzman*, 2018 WL 1665252, at *9; *Mayfield*, 95 F. Supp. 3d at 702.

Defendants attempt to minimize the severity of their alleged misconduct, suggesting that failure to lawfully service process is a minor technicality from which Defendants should be excused from complying. *See* Mullooly Mem. 13; PS Mem. 2. But sewer service eviscerates the most basic due process protection: the opportunity to defend oneself in court. *See Mullane*, 339 U.S. at 314. Defendants' sewer service is far more unfair than the conduct alleged in the cases that Defendants rely upon where § 1692f claims were dismissed. *See Schaefer v. IC Sys., Inc.*, No. 17 CV 1920 (FBS) (JB), 2020 WL 1083633, at *2 (E.D.N.Y. Mar. 6, 2020) (cited at Mullooly Mem. 21, 22) (collection letter sent during bankruptcy stay); *Rosenberg v. Client Servs., Inc.*, No. 19 CV 6181 (VB), 2020 WL 2732017, at *4 (S.D.N.Y. May 26, 2020) (cited at Mullooly Mem. 21) (collection letter stating "Please call me at 877-665-3303 for more information. I want to help you avoid any possible legal action"); *De La Cruz v. Fin. Recovery Servs., Inc.*, No. 17 CIV. 9931 (PGG), 2019 WL 4727817, at *7 (S.D.N.Y. Mar. 28, 2019) (cited at Mullooly Mem. 21) (collection letter stating correct account balance without specifying whether interest was accruing); *Ceban v. Capital Mgmt. Servs., L.P.*, No. 17 CV 4554

(ARR)(CLP), 2018 WL 451637, at *1 (E.D.N.Y. Jan. 17, 2018) (cited at Mullooly Mem. 22) (collection letter stating "this settlement may have tax consequences").

### C.  Defendants Violated § 1692f by Unduly Prolonging the Legal Proceedings

In *Arias*, the Second Circuit "h[e]ld that a debt collector engages in unfair or unconscionable litigation conduct in violation of section 1692f when . . . it in bad faith unduly prolongs legal proceedings or requires a consumer to appear at an unnecessary hearing." 875 F.3d at 138. Plaintiffs' Complaint alleges that Defendants do precisely that, by filing boilerplate oppositions to consumers' motions challenging service, devoid of any specific facts, that double down on the false affidavits of service; by refusing to dismiss actions or vacate judgments even when consumers credibly tell Mullooly that the affidavits of service in the cases against them are false; and by calling Bouton and Elashrafi as witnesses even though they offer transparently false testimony. *See* Am. Compl. ¶¶ 113-24, 183-200, 271-276, 299(g).

Mullooly's attempt to excuse its own actions, Mullooly Mem. 23, is triply flawed. First, Mullooly faults Plaintiffs for failing to provide "documentary evidence" that their non-existent relatives did not exist. There is no documentation that a consumer could possibly provide to prove that a person does not exist. Regardless, nowhere does *Arias* state that unduly prolonging court proceedings is only unlawful if a debt collector ignores documentation. To the contrary, *Arias* specifically found that the defendant violated 1692f by refusing to lift a bank restraint, and filing an objection, "despite having no good-faith basis" to do so — precisely what Plaintiffs allege here. 175 F.3d at 138 (quotations omitted); Am. Compl. ¶ 121.

Second, when a consumer raises a credible challenge to service of process, there is no "presumed accuracy of the affidavits of service," Mullooly Mem. 23; instead, the burden is on the debt collector (and process server) to establish service. *See, e.g.*, *Citibank, N.A. v. Balsamo*,

41 N.Y.S.3d 744, 745 (N.Y. App. Div. 2016). Moreover, the complaint alleges that Mullooly

does not just passively rely on the affidavit of service's falsehoods, but continuously and

affirmatively reiterates their accuracy. *See, e.g.*, Am. Compl. ¶¶ 182-197.

Finally, whether Mullooly was sanctioned in state court, *see* Mullooly Mem. 23, plainly

presents different issues than whether it is liable under the FDCPA. *See Gabriele v. Am. Home

Mortg. Servicing, Inc.*, 503 F. App'x 89, 93 (2d Cir. 2012) ("[D]etermining whether

[defendant's] misconduct amounted to substantive bad faith sufficient to warrant sanctions [in

state court] requires a substantially different analysis than determining whether it violated

the FDCPA . . . .").

## III.   The Court has Jurisdiction Over Plaintiffs' Well-Pleaded State Law Claims Against Defendants

Plaintiffs properly plead claims under the FDCPA, and the Court has subject matter

jurisdiction over Plaintiffs' state law claims because they "derive from a common nucleus of

operative facts." *Sanchez v. Ehrlich*, No. 16 CV 8677 (LAP), 2018 WL 2084147, at *6

(S.D.N.Y. Mar. 29, 2018) (quotations omitted); *see* 28 U.S.C. § 1367(a). Here, the state law

claims do not substantially predominate over the federal claims, there are no novel or unresolved

questions of state law, and the scope of discovery would be essentially the same for the federal

and state law claims because the same conduct gives rise to all of the claims alleged by

Plaintiff's complaint. Furthermore, even if the federal claims are dismissed, this Court should

maintain supplemental jurisdiction because doing so will promote "economy, convenience,

fairness, and comity." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448

(2d Cir. 1998).

### A.  Plaintiffs Have Stated A Claim Under N.Y. G.B.L. § 349 For Defendants' Deceptive, Consumer-Oriented Conduct

Plaintiffs adequately plead consumer-oriented, deceptive conduct that is at the core of the unlawful practices proscribed by Section 349 of the General Business Law, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state . . . ." G.B.L. § 349(a). To state a claim under G.B.L. § 349, Plaintiffs must allege that the Defendants' conduct was (1) consumer-oriented and (2) materially misleading, and that (3) Plaintiffs suffered injury as a result of the defendant's deceptive act or practice. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017). The Process Server Defendants argue that Defendants' conduct was not "consumer-oriented" because Plaintiffs were not the "recipients" of their false and misleading statements. PS Mem. 14. Defendant Mullooly argues that Plaintiffs have not adequately alleged materially misleading conduct that was directed at Plaintiffs. Contrary to Defendants' arguments, Plaintiffs adequately plead each element of their G.B.L. § 349 clam.

First, courts have routinely found that plaintiffs in other cases sufficiently plead G.B.L. § 349 claims on facts very similar to the case at hand. *See Sykes*, 780 F.3d at 86 ("False affidavits of merit . . . provide independent bases for liability for . . . claims" brought under the FDCPA and GBL § 349); *Guzman*, 2018 WL 1665252, at *12 (triable issues of fact exist "as to whether the statements in the Affidavit of Service and Affidavit of Merit were false and would be materially misleading to a reasonable consumer" under GBL § 349); *Scott*, 2017 WL 1214441, at *16 ("The repeated filing of fraudulent debt collection lawsuits against New York consumers qualifies as consumer-oriented conduct under General Business Law section 349."); *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CV 8779 (ER), 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) (filing a false affidavit of service with the court and later restraining a bank

account for a vacated judgment is precisely the type of conduct that is likely to mislead a consumer acting reasonably under the circumstances); *see also Aghaeepour v. N. Leasing Sys., Inc.*, No. 14 CV 5449 (NSR), 2015 WL 7758894, at *15 (S.D.N.Y. Dec. 1, 2015), order corrected on denial of reconsideration, 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016) (the persistent filing of fraudulent debt collection lawsuits against New York consumers falls within the scope of § 349).

Second, courts repeatedly have held that a "routine" deceptive business practice affecting many similarly situated consumers is inherently consumer-oriented conduct that harms the public interest and thus violates the statute. *See Feldman*, 210 F. Supp. 2d at 301; *see also Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 449 (E.D.N.Y. 2013). (explaining consumer-oriented prong is satisfied when the alleged conduct "potentially affects similarly situated consumers" (quotation omitted)). The Process Server Defendants have not cited a single authority for the claim that their deceptive conduct was not "consumer-oriented" because Plaintiffs were not the "recipients" of their misrepresentations, PS Mem.14. Certainly, systematically engaging in sewer service by falsifying hundreds of affidavits of service that are the basis for hundreds of consumer debt collection lawsuits that result in ill-gotten payments and default judgments is misconduct that is consumer-oriented. *See Mayfield*, 95 F. Supp. 3d at 700 ("Defendants' deceptive conduct is consumer-oriented and harmful to the public interest in that consumers are forced to respond to the fraudulent lawsuits or else face the penalty of wrongful default judgments, garnished wages, restrained bank accounts and impaired credit opportunities."); Am. Compl. ¶¶ 155-60.

Third, Defendant Mullooly cites no authority for its claim that its alleged deception was not directed at Plaintiffs, but to the courts, and is therefore not materially misleading under

G.B.L. § 349. In fact, courts have found the opposite, concluding that "[p]assing fraudulent communications through the court en route to consumers does not cleanse defendants of liability under § 349." *Mayfield*, 95 F. Supp. 3d at 700 (rejecting defendants' argument that because the only alleged deceptive statements were in court documents, including affidavits of service, their actions did not violate G.B.L. § 349); *see also Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743, 753 (Dist. Ct. 2013) (deceptive litigation practices can form a basis for a claim under G.B.L. § 349). Indeed, the sole case cited by Mullooly in its Motion to Dismiss does not support its argument. *See* Mullooly Mem. 24 (*citing Frintzilas v. DirectTV, LLC*, 731 Fed. Appx. 71, 72 (2d Cir. 2018)). In *Frintzilas*, the Court dismissed the case, finding that the plaintiffs lacked standing because they failed to plead any actual injury caused by the alleged materially misleading statement; additionally, the court noted that the statement was not even misleading. *Id.*

Finally, Plaintiffs here allege falsehoods that would "likely [] mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995). Like the FDCPA, G.B.L. § 349 does not require a plaintiff to show that he or she relied on the deception. *Fritz*, 955 F. Supp. 2d at 174 (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000)). As such, the Process Server Defendants' claim that Plaintiffs' § 349 fails because they did not plead reliance is unavailing. *See* PS Mem. 16. As detailed above, Defendants' unlawful conduct of filing, litigating, and collecting putative debts based on sewer service and false affidavits of service is improper and deceptive and would likely mislead a reasonable consumer. Plaintiffs here, "unschooled in the law, could be readily deceived into believing that" they have no legal redress to challenge the judgments, defend the debt collection cases, or challenge the unlawful service. *See also Midland Funding*, 961 N.Y.S.2d at 754; Am. Compl. ¶¶ 109110, 117-124, 157-158.

24

### B.  Defendants Gotham and Mullooly Breached Their Common Law and Statutory Duties of Care to Plaintiffs By Engaging in Unlawful Service of Process

To prevail on a negligence claim under New York law, a plaintiff must establish "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013). Plaintiffs plead negligence claims against only Gotham and Mullooly. Gotham does not dispute that Plaintiffs have adequately pleaded those elements.[3] Mullooly does not dispute that it owes a common law and statutory duty to Plaintiffs or that Plaintiffs were harmed by its negligent conduct; the only argument raised by Mullooly is that it did not breach its duties of care because it did not use materially misleading representations or means to collect a debt. Mullooly Mem. 25.

As Defendants Gotham and Mullooly concede, they have a common law[4] and statutory[5] duty of reasonable care to Plaintiffs in the collection of putative debts. They breach their duties of care by failing to take reasonable steps in the performance of their debt collection work, and failing to take reasonable steps to ensure that they do not perpetrate a scheme of filing debt collection lawsuits that rely on false service of process on putative debtors. *See Lindor v.*

---

[3] The Process Server Defendants state in the header of Point II of its Motion to Dismiss that Plaintiffs fail to state a claim for negligence, PS Mem. 12, but do not make any arguments in their brief supporting this claim.

[4] *Sanchez*, 2018 WL 2084147, at *9; *Colorado Capital v. Owens*, 227 F.R.D. 181, 191 (E.D.N.Y. 2005) (debt collector owes duty of reasonable care in the collection of a putative debtor's debt).

[5] Gotham and Mullooly concede that they have statutory duties of care under the FDCPA and GBL § 349, and Defendant Gotham also has a statutory standard of care imposed by N.Y.C. Admin. Code § 20-409.2, as Plaintiffs are exactly the class of individuals that those statutes are designed to protect. *See Sanchez*, 2018 WL 2084147, at *6-7 ("Under New York law, where a statutory scheme is aimed at protecting a distinct class of persons from a particular harm, the statute may create an additional standard of care benefiting those persons."); 15 U.S.C. § 1692(e) (The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."); *Oswego*, 85 N.Y.2d at 25 ("[T]he legislative history makes plain that [G.B.L. § 349] was intended to afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds." (quotation omitted)); N.Y.C. Admin. Code § 20-409.2 (protecting "[a]ny person injured by unlawful service of process").

*Palisades Collection, LLC*, 30 Misc. 3d 754, 762 (Sup. Ct. 2010) (finding that debt collector defendants "owe a duty to take reasonable steps in performing their work, and to take reasonable steps to ensure they do not" mistakenly collect a debt from the wrong putative debtor).

As pled by Plaintiffs, Defendants breach their common law and statutory duty to take reasonable steps to lawfully effectuate service; to refrain from preparing, signing, and filing false affidavits of service; to refrain from filing applications for default judgments that contain false statements; and to refrain from filing court documents, such as opposition papers, that contain false statements. *See* Am. Compl. ¶¶ 109-110, 117-124, 157-158. By persistently filing and litigating improper debt collection actions with no prior or meaningful review when Defendants know or should know that the underlying affidavits of service are false, Defendants breach their duties of care. *See* Am. Compl. ¶¶ 125-148 (Gotham's and Mullooly's knowledge of Elashrafi's and Bouton's sewer service), ¶¶ 155-160, 201-204, 226-230, 251-254, 278-281 (harm to Named Plaintiffs and Class Members). Indeed, based on the Defendants' concessions, a fact finder would conclude that Defendants Gotham's and Mullooly's conduct is a breach of their common law and statutory duties of care. *See Lindor*, 30 Misc. 3d at 763 (whether a duty of care is breached by the defendant is a question for a jury). This Court should deny Defendants' Motions to Dismiss because Plaintiffs have pleaded negligent conduct sufficient to preclude a finding as a matter of law.

## C.  Process Server Defendants Violate N.Y.C. Admin. Code § 20-409.2 by Falsifying Affidavits of Service

Section 20-409.2 of the New York City Administrative Code provides a private right of action against process servers and process serving agencies for the failure of a process server to "act in accordance with the laws and rules governing service of process in New York state." Process Server Defendants claim that the false affidavits of service are of "no import" in this

case because three of the four Named Plaintiffs received the debt collection summonses and complaints by some other means. PS Mem. 17. This argument is unsupported and contrary to law. As explained above, under New York law, an individual's actual knowledge of a lawsuit does not obviate the requirement that service of process must be made lawfully, and New York courts lack personal jurisdiction over any person who was not lawfully served with process. *See, e.g.*, *Washington Mut. Bank v. Murphy*, 127 A.D.3d 1167, 1174 (N.Y. App. Div. 2015); *Shaw v. Shaw*, 97 A.D.2d 403, 404 (N.Y. App. Div. 1983). More importantly, actual knowledge is not relevant to Plaintiffs' cause of action under § 20-409.2 of the Administrative Code. The plain language of the statute affirms that any person injured by a process server's failure to follow the laws and rules governing service of process in New York "shall have a cause of action against such process server and process serving agency." N.Y.C. Admin. Code § 20-409.2. Certainly, falsely claiming service on non-existent relatives is a violation of the laws and rules governing service of process in New York, and Plaintiffs plead that they were injured by this conduct. Am. Compl. ¶¶ 63-101.

The Process Server Defendants argue that the filing of affidavits of service that contain "material falsehoods" is not actionable under the statute because service of process is a "'legitimate' use of the Court system." PS Mem.17. But the only case they cite to, *Gidumal v. Cagney*, 144 A.D.3d 550 (N.Y. App. Div. 2016), does not remotely support that proposition. In *Gidmul*, the plaintiff's claim under Administrative Code § 20-409.2 failed because the plaintiff was, in fact, personally served with the summons and complaint. *Id.* at 551; *see also Gidmul v. Cagney*, 2015 WL 4698758 *1 (N.Y. Sup. Ct. 2015). The Process Server Defendants conflate *Gidmul*'s discussion of § 20-409.2 with its discussion of a wholly separate abuse of process claim, which is not relevant here.

Finally, the question of whether Plaintiffs "owed the debts" in the underlying debt collection cases is irrelevant and unrelated to the fact that Process Server Defendants violated Administrative Code § 20-409.2 by failing to lawfully serve Plaintiffs. PS Mem. 17. This case is about Defendants' deceptive and unfair practice of falsifying affidavits of service in debt collection actions, not about the legitimacy of the putative consumer debts.

## IV.    No Allegations of the Complaint Should be Stricken

The Process Server Defendants' motion to strike certain allegations of Plaintiffs' complaint, PS Mem. 18-19, should be denied. *See Morris v. Gilbert*, 649 F. Supp. 1491, 1498 (E.D.N.Y. 1986) (motions to strike are often "time wasters"); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing."). Plaintiffs' allegations regarding "sewer service," a term commonly used (including by the Second Circuit and the New York State Unified Court System) for intentional failure to serve process, go to the heart of the allegations in the Complaint. *See, e.g.*, *Sykes*, 780 F.3d 70 (describing "sewer service" claims); Am. Compl. ¶ 36 (quoting New York State Unified Court System's explanation that debt collectors often "fail[] to provide consumers with a notice of lawsuits started against them, a troubling practice dubbed 'sewer service.'"). Likewise, the Complaint, in describing Defendants' challenged conduct, alleges that Defendants engage in coordinated unlawful activity. Plainly, a description of the alleged wrongdoing by Defendants leading to Plaintiffs' claims is not "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), nor does it suggest that Defendants committed any crime. *Cf. Ricketts v. City of Hartford,* 74 F.3d 1397, 1415 (2d Cir. 1996) (finding District Court erred in striking allegations that defendants engaged in a conspiracy, even after defendants had been granted summary judgment on the related conspiracy claim).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motions to Dismiss.

Dated:  New York, New York
        October 2, 2020

                                    Respectfully submitted,

                                    _____

                                    Jessica Ranucci
                                    Julia Russell
                                    Jane Greengold Stevens
                                    Shanna Tallarico
                                    NEW YORK LEGAL ASSISTANCE GROUP
                                    7 Hanover Square
                                    New York, NY 10004
                                    (212) 613-5000
                                    jranucci@nylag.org

                                    *Counsel for Plaintiffs*